## THE STATE VS. CRAWFORD, Auditor.

1. SPECIAL STATUTE: *Act for benefit of Johnson and Reynolds constitutional.*
    The act of the legislature of the fifteenth of March, 1879, to settle the debt of Reynolds and Johnson to the state of Arkansas, and her debt to them, is not in violation of any provision of the constitution. [See opinion for the act and the objections to it.—REP.]

2. STATUTES: *Passage of bills.*
    A bill was regularly passed by the house of representatives and transmitted to the senate. It was there read twice and referred to a committee. During its pendency in the senate, a motion was made in the house to reconsider it; and it was recalled from the senate, and then the motion to reconsider was adopted. It was then again passed in the house and transmitted to the senate, and there read again—the third time—and passed. *Held*, that the bill was constitutionally passed.

The State vs. Crawford, Auditor.

APPEAL from *Pulaski* Chancery Court.
Hon. DAVID W. CARROLL, Chancellor.
*Attorney General*, for the State.
*Rose, contra.*

EAKIN, J.    The general assembly of the state of Arkansas passed the following act, which was approved on the fifteenth of March, 1879 :

"An act to settle the debt due from the state of Arkansas to L. L. Johnson and D. H. Reynolds, and the debt due to her from them.

"Whereas, The state of Arkansas was, on March 1, 1872 indebted to Johnson and Reynolds in the sum of $38,032.45,' in currency, for work done by them on the public levees in Chicot county; and Johnson and Reynolds were, at that time, indebted to the state of Arkansas, on account of mortgages to the Real Estate bank, in the sum of $94,590.98, payable in bonds of the state, then worth, in currency, the sum of $28,377.27, being an excess in favor of Johnson and Reynolds of the sum of $9,655.16, in currency, as ascertained by the Pulaski chancery court; and on April 1, 1874, they paid on the debt due to the state the sum of $32,309.07 in Real Estate bank bonds, leaving due at this time, with accrued interest, the sum of $94,022.20, payable in bonds.

And, whereas, Johnson and Reynolds are willing to set off the debt due to them against the debt due from them, as of March 1, 1872, and to remit the excess due to them; and accept such adjustment as a final settlement of the matters between them and the state; and said offer is fair and should be accepted by the State; therefore,

"*Be it enacted by the general assembly of the state of Arkansas:*

"Section 1.    That the auditor be, and he is hereby au-

thorized and directed to issue to Johnson and Reynolds, certificates, in such sums as they may desire, on the treasurer, to the amount of $94,022.20, to be used by them in payment of debt due from them to the state of Arkansas; and upon the presentation of such certificates to the treasurer, he shall receipt therefor, and upon the presentation of such receipts to the Pulaski chancery court, said court is authorized and directed to cause the decrees for the debt due to the state to be satisfied as required by law, upon payment.

"Sec. 2. That the auditor be, and he is hereby, authorized and directed, to further issue to said Johnson and Reynolds certificates on the treasurer, in such sums as they may desire, to the amount of $32,309.07, in lieu of the bonds paid on the debt due the state on April 1, 1874, which certificates shall be receivable by the treasurer in payment of debts due to the state on lands mortgaged to the Real Estate bank.

" Sec. 3. That the certificates, so to be issued, shall be in full of all demands of said Johnson and Reynolds against the state of Arkansas.

" Sec. 4. That this act shall take effect and be in force from and after its passage."

The auditor being about to issue the certificates, in pursuance of this act, the Attorney General filed this bill to enjoin him, upon the grounds that the act was unconstitutional. The cause was heard upon the bill, answer and exhibits, before the Hon. D. W. Carroll, Chancellor, who refused the injunction, and dismissed the bill.

The state appealed.

The written opinion of the Chancellor seems to have been well considered. It contains a clear statement of the

case, and his conclusions commend themselves as sound in principle. We adopt it as follows:

" This is a petition, brought in the name of the state of Arkansas, by W. F. Henderson, Esq., praying for a restraining order, directed to John Crawford, as auditor of the state of Arkansas, to prevent and restrain said auditor from issuing certain certificates to Johnson and Reynolds, under the provisions of an act of the general assembly of the state of Arkansas, entitled ' an act to settle the debt due from the state of Arkansas to L. L. Johnson and D. H. Reynolds, and the debt due to her from them,' approved fifteenth of March, 1879. The auditor appears and files his answer. This act was based upon proceedings had in this court in four certain cases therein pending for the foreclosure of certain mortgages on lands which had been executed to the Real Estate bank, to secure the stock subscriptions of mortgagors. L. L. Johnson and D. H. Reynolds were the owners of the equity of redemption in all of the four cases. During the progress of the trial of these cases in this court, Johnson and Reynolds filed a set-off and counter-claim against the state for certain levee work done by them under contract with the state authorities. The court, upon the filing of this set-off and the counter-claim, deeming that it had no authority to entertain such proceedings, for the purpose asked by the said Johnson and Reynolds, but considering that, upon equitable principles, they should be allowed a fair and equitable settlement with the state, as to this indebtedness and the debt due by them under said stock mortgages, entertained the question of set-off, under the principle and in analogy to *sec. 5, chap. 166, of Gould's Digest,* and referred the matter to a Master in Chancery to ascertain the truth of this set-off, and the

amount reasonably due to said Johnson and Reynolds from the state for the levee work done by them.

"The court, in making this reference, declared that, in accordance with the principles of equity, this off set should be allowed, but that this court had no authority to adjudge the same against the state; that right vested only in the general assembly. The Master, afterwards, filed his report, accompanied by the testimony of competent witnesses, wherein it appears that the amount due to Johnson and Reynolds, on the first of March, 1872, was the sum of $38,-032.45, in currency, for the levee work. And, at that time, they owed the state of Arkansas $94,590.98, on the stock mortgages in the cases pending in this court, as above stated.

"Upon the coming in of this report the court ordered that a transcript of all the proceedings regarding the set-off, the orders of the court, the report of the Master, and the evidence accompanying the same, together with the opinions of the court, should be made out and certified to and transmitted to the general assembly for its action. The act of the general assembly, above referred to, was then passed.

"The first point made by the petition now under consideration, is, that the act is a special act, and that no notice of the intention to apply therefor had been published, in accordance with *sec. 26, of Art. V, of the Constitution*, and of an act entitled 'an act to provide for giving notice of an intention to introduce local and special bills,' approved December 4, 1874. The section of the constitution referred to, provides that 'no local or special bill shall be passed, unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected shall be situated.'

"It seems to the court that this provision of the constitution does not apply to the bill passed by the general assembly, above referred to; but if it does so apply, the court is of opinion that the notice shown in evidence here to have been given, is sufficient.

"The second point made by the petitioner here, is, that the effect of the act of the general assembly, referred to, is to grant extra compensation to a contractor, after the services had been rendered, and contract made, and to appropriate money for the payment of a claim, the subject-matter of which had not been provided for by pre-existing laws; and that said bill was not passed by a majority of two-thirds of the members elected to each branch of the general assembly; and is, therefore, a violation of *sec. 27, of Art. V, of the Constitution.*

" The court can not see that any extra compensation was granted by this act to the contractors, Johnson and Reynolds, but, on the contrary, the amount found to be due them was for work done for the state, for which they had not been paid, under a contract with the state, through its proper officers. This work was done under the act of 1869, providing for the building of levees. It seems from the records and proceedings in this court, in the matter of the set-off, that the levee bonds were exhausted whilst the contractors were progressing with their work, and that they had no source for payment for their work, but to look to the general assembly for relief.

" The payment for levee work had been provided for by pre-existing laws, and if the funds, out of which this payment was to be made, had been exhausted, it is nothing but equitable and matter of right that some provision should be made for its payment. The court does not think that this act of the general assembly is obnoxious to the

charge of violating the provisions of the *27th section, of article 5. of the Constitution.*

. "The third objection urged by the plaintiff is without foundation, as no general law could be passed to meet the objects sought to be attained in the act referred to.

"The fourth objection is, that the act was not passed in accordance with *sec. 22, of Art. V, of the Constitution*, because the same was not finally passed by the house of representatives until the night of the twelfth of March, and no action was taken therein in the senate until the last day of the session of the general assembly within the meaning of said section. Reference is had to the journals of both houses of the general assembly. The copies of the journals certified to and filed with the petition are not the full proceedings of the two houses relating to the bill in question, as is admitted by the attorney general, but they are true as far as they go. The answer of the auditor discloses the full proceedings of the general assembly, and these proceedings appear on the journals.

"It appears that this bill was introduced in the house of representatives on the twenty-fifth of February, 1879, and was referred to the committee on the ways and means, and that committee reported the bill back to the house, and it was referred to the committee on judiciary; that on the fourth of March the bill was reported back from the committee on the judiciary with a recommendation that it do pass, and the bill was made the special order for the Monday following. On March 10 said bill was read a second time, and the rules were suspended and the bill read a third time and made the special order for the next day. On the eleventh of March the bill was taken up and placed upon its passage, and by a vote taken by yeas and nays and entered on the journal, the bill was passed. A motion was

made to reconsider the vote taken on the passage of the bill.

"It appears that the house ordered the bill to be transmitted to the senate for its action, and whilst in the possession of the senate it went through two readings, under a suspension of the rules, and was referred to the committee on finance. Afterwards the senate received a message from the house of representatives, requesting the house to return the bill in question. It was returned to the house, and there the motion to reconsider was taken up, and was decided in the affirmative. The bill was then passed by the house, by a vote by yeas and nays, and entered on the journals, and the house then directed the bill to be sent back to the senate, with the information that after reconsideration the bill had again passed the house of representatives; whereupon, on motion, the bill was taken up in the senate and read a third time, and placed on its final passage, and the bill was passed by a vote of yeas and nays and entered on the journal.

"*Sec. 22, Art. V, of the Constitution* provides as follows: 'Every bill shall be read at length on three different days in each house, unless the rules be suspended by two-thirds of the house, when the same may be read a second or third time on the same day, etc.'

"It is conceded, and it so appears, that the bill that passed the house the first time was sent to the senate, and went through two readings on the same day under a suspension of the rules, is the same bill that was recalled by the house from the senate and was by the house passed a second time, and sent back to the senate, and was there read a third time and passed.

"The first message from the house of representatives to the senate transmitting the information that the house had

The State vs. Crawford, Auditor.

passed this bill, must have been sent before the motion to reconsider had been made in the house. This must be presumed, as it can not be supposed that such a message would have been sent pending a motion to reconsider.

" The court is of the opinion that the reading of this bill in both branches of the general assembly was had in substantial compliance with the provisions of the *twenty-second section of Art. V of the Constitution.*

" The points of objection raised in the second and fourth paragraphs of the petition are intricate, and the court has found some difficulty in arriving at a correct conclusion, but after a deliberate examination the result indicated above has been arrived at, and the court is of opinion that the act of the general assembly under examination has been passed by that body in compliance with the provisions of the constitution of the state.

" The general assembly has seen proper to adjust and settle the mutual indebtedness between the state and two of her citizens upon the basis of equity, and the court can not see that this settlement can work a great and irreparable injury to the state.

" The restraining order must be refused, and the petition dismissed."

Let it be affirmed.