MARYLAND CASUALTY COMPANY v. RAINWATER.

Opinion delivered March 14, 1927.

1. BANKS AND BANKING—INSOLVENCY—PREFERENCE OF STATE.— Where the State made a deposit in a bank which became insolvent, the State was not entitled to preferential payment of its claim over other creditors, the common-law rule of preference of the sovereign over the subjects not being applicable.

2. STATES—EFFECT OF MAKING DEPOSIT IN BANK.—The State, in making a deposit in a bank, does not exercise a governmental function, but merely engages in ordinary business, in which it is divested of sovereignty.

3. STATES—PREFERENCE ON INSOLVENCY OF DEPOSITORY.—Where the State has declared no intention by its statutes to claim priority of its deposits in insolvent bank over the rights of other creditors, it will be held to have waived any right to such preference.

4. SUBROGATION—CLAIM OF SURETIES AGAINST INSOLVENT BANK.— Sureties on depository bonds, having repaid the State for amounts for which an insolvent depository was liable, were subrogated to the State's right of collection against the insolvent bank.

5. BANKS AND BANKING—INSOLVENCY OF DEPOSITORY.—Sureties on a bond covering the State's deposits in an insolvent bank held not entitled to preference as against other creditors and depositors.

Appeal from Franklin Chancery Court; *J. V. Bourland,* Chancellor; affirmed.

STATEMENT BY THE COURT.

The People's Bank of Ozark, Arkansas, a duly designated State depository, on January 22 was insolvent and failed, its assets being taken over on January 22, 1926, by Loid Rainwater, the State Bank Commissioner, for administration and distribution under the laws providing therefor.

This bank had applied to the Treasurer for a deposit of State funds, offering with its application a bond of State depository, dated June 1, 1925, with the Maryland Casualty Company as surety thereon, in the penal sum of $10,000, and a like bond of the Ætna Casualty and Surety Company for $15,000. The applications were granted, and the State's funds deposited in said bank accordingly.

When it was taken over by the Bank Commissioner, the State of Arkansas had on deposit with said bank, as such State depository, the sum of $20,000 of money, all of which had been deposited in said failed bank since the execution and approval of the bonds mentioned.

On March 15, 1926, the surety companies, on demand of the State, repaid the $20,000 to the State of Arkansas, in accordance with the terms of their bonds, prorating the loss in proportion to the amount of the respective bonds. The surety companies presented their claims to the Bank Commissioner against the estate of said bank for repayment of their losses, and the Commissioner refused to allow them as preferred claims, but allowed them as common claims for the amount paid.

Suits were then brought in the Franklin Chancery Court by the bonding companies, claiming the State was entitled to priority and preference payment of its claim of $20,000 for money deposited, against all other depositors and creditors of the insolvent bank; that, by reason of the payment of said debt to the State of Arkansas by the surety companies, they had become subrogated to all the rights of the State as against the assets of said bank for the repayment of that amount, and are entitled to preference above all creditors and depositors of said

bank for the amount so paid by them as sureties. The State's contracts with the depository bank were made exhibits to the complaints.

The appellees demurred separately to the complaints, and to all parts of each which sought allowance of the claims over and above the amount allowed by appellee, and to have said claims treated otherwise than as common claims.

The court sustained the demurrers, after ordering the cases consolidated, and from this decree the appeal is prosecuted.

*R. R. Lynn* and *J. A. Sherrill,* for appellant.

*Trieber & Lasley,* for appellee.

KIRBY, J., (after stating the facts). The appellants contend that the State of Arkansas, by virtue of its sovereignty, is entitled, under the common law, to preference of its claims in this instance over and above the claims of all its citizens or subjects, and that the sureties herein, through the payment of the State's claims and the right of subrogation resulting therefrom, are likewise entitled to the same preference as the State of Arkansas had at the time of the payment of said claims.

The common law of England has been adopted by our State by statute, § 1432, Crawford & Moses' Digest, as follows: "The common law of England, so far as the same is applicable and of a general nature, and all statutes of the British Parliament in aid of or to supply the defect of the common law, made prior to the fourth year of James the First (that are applicable to our own form of government), of a general nature and not local to that kingdom, and not inconsistent with the Constitution and laws of the United States or the Constitution and laws of this State, shall be the rule of decision in this State, unless altered or repealed by the General Assembly of this State."

It will be seen from this statute that the State adopted nothing from the common law contrary to the genius of our institutions, but only that part of the common law, general in its nature, applicable to our own

form of government, and not inconsistent with the Constitution and laws of the United States or the Constitution and laws of this State, providing that such should be the rule of decision in this State, unless altered or repealed by our Legislature.

It is true also that, under the common law of England, where the King's title and that of the subject concur, or conflict, the King's title was preferred. Broom's Legal Maxims, 55. In *Marshall* v. *New York,* 254 U. S. 380, 41 Sup. Ct. 143, 65 L. ed. 315, Mr. Justice Brandeis, for the court, said: "At common law, the Crown of Great Britain, by virtue of a prerogative right, had priority over all subjects for the payment out of the debtor's property of all debts due it. The priority was effective alike whether the property remained in the hands of the debtor or had been placed in possession of a third person or was *in custodia legis.* The priority could be defeated or postponed only through the passing of title to the debtor's property absolutely or by way of lien, before the sovereign sought to enforce his right."

Blackstone says the British Crown enjoyed an incidental prerogative which is only an exception in favor of the Crown to those general rules established for the rest of the community, among which was that the King's debt shall be preferred before a debt to any of his subjects. I Black. Com. (Cooley's 4th ed.) 240.

Conceding that the State succeeded to whatever prerogative rights the King of England had and exercised under the common law as adopted by it, it has never attempted nor shown any disposition to exercise any such prerogative as claimed here since its organization. It is true, as contended by appellant, that the State does exercise a prerogative right, not to be made a defendant in any of her courts, but this is specifically declared in her Constitution, the grant of power from the people, article 5, § 20.

It is also true that no law has been enacted abrogating or repealing the common law relating to such prerogative rights, but it has been the policy and practice

of the State, in the exercise of such prerogative rights, to declare them in her laws and not insist upon having succeeded to them as against her citizens under the common law.

There is no doubt but that the State could have declared, in the law authorizing the establishment of depositories and requiring security for her moneys deposited therein, that she should also be entitled to a preference and priority of payment of her claims for money so deposited against all other depositors and creditors of such bank depositories. No such right was declared or reserved, however, under the terms of the depository law, it being the apparent intention to have the State rely only upon the security and ability of the banking institution and the solvency of its sureties for the repayment of its money deposited therein according to the law. The State, in making such deposit, was not exercising a governmental function, but only engaged in ordinary business. Its attitude with regard to the transaction was just such as might have been assumed by any individual or private corporation, which might have chosen to lend its money to the bank; and, as said in *Callaway* v. *Cossart,* 45 Ark. 88: "When a State steps down into the arena of common business in concert or in competition with her citizens, she goes divested of her sovereignty." The State cannot presume, under such conditions, to exercise the ancient prerogative of the King and claim a preference in the repayment of her moneys loaned to, or deposited in, the failed bank, as against all other depositors and creditors thereof, having made no intimation or declared no intention in her laws relating thereto that such would be done. She will be held to have waived or abandoned such prerogative right, which cannot be exercised under existing laws.

The sureties on the bonds of the depository bank having repaid the State the amounts for which the bank was liable, and they were bound as sureties, are, of course, subrogated to the State's right for collection against the failed institution, but are not entitled to any

preference as against the other depositors and creditors under existing laws, providing for none.

No error was committed in sustaining the demurrers and dismissing the complaints, and the decree is affirmed.