GRABLE *v.* BLACKWOOD.

FINTON *v.* BLACKWOOD.

Opinion delivered November 11, 1929.

312

*Robinson, House & Moses, Harry E. Meek, W. H. Cooper* and *Horace Sloan,* for appellants.

*Hal L. Norwood,* Attorney General, *Claude Duty,* Assistant and *Harry P. Daily,* for appellees; *Rice & Dickson, Amici Curiae,* for appellants.

HART, C. J., (after stating the facts). The correctness of the decisions of the trial courts depends upon the construction to be given to act 153, passed by the Legislature of 1929, which was in aid of road districts in the State of Arkansas. Acts of 1929, vol. 1, p. 785. Section 1 provides for the payment of outstanding indebtedness other than bonds incurred prior to January 1, 1927, and reads as follows:

"That the Highway Commission shall, as soon as possible, ascertain the amount of any valid outstanding indebtedness incurred prior to January 1, 1927, against any road district in the State of Arkansas organized prior to the passage of act No. 11 of the Acts of the General Assembly of the State of Arkansas for the year 1927, which was approved February 4, 1927, and shall draw vouchers to be paid out of the appropriation already provided for in act No. 18 of the Forty-seventh General Assembly for the payment of road district bonds and interest obligations; such voucher shall be delivered to the person authorized to receive the same, on proper satisfaction of such indebtedness; provided that such payments so made shall be charged against the allotment to the respective counties (in which the road was located) as made by the Highway Commission, and, if in two or more counties, it shall be prorated in accordance with the mileage of the road in each county."

The act under consideration was passed by a two-thirds majority of those voting thereon, both in the Senate and in the House of Representatives, but it did not receive a two-thirds majority of the members elected to each branch of the General Assembly.

Counsel for appellants seek to reverse the decree in the chancery court, and the judgment in the circuit court

under the authority of *Belote* v. *Coffman,* 117 Ark. 352, 175 S. W. 37, where it was held that the legislative appropriation for the exhibit of the resources of the State at the Panama-Pacific Exposition was not a necessary expense of government, and required a two-thirds majority vote on the act by each house of the Legislature in its favor to render it valid. They claim that, while the act under consideration was not an appropriation to defray the necessary expenses of government, it was in the nature of a donation in aid of the road improvement districts of the State which were duly organized under acts of the Legislature, and that the appropriation made was for a public purpose.

On the other hand, it is contended by counsel for appellees, that the act under consideration is governed by the provisions of § 27, article 5, of the Constitution, which was construed in the case of *Oliver* v. *Southern Trust Company,* 138 Ark. 381, 212 S. W. 77. In that case it was held that the Legislature could not appropriate money to pay a claim against the State not authorized by pre-existing law, except by a bill passed by two-thirds of the members elected to each branch of the General Assembly. They contend that the outstanding indebtedness referred to in the act under consideration are not claims under preexisting laws, under the section of the Constitution construed in the Oliver case, and that the bill is unconstitutional because it was not passed by two-thirds of the members' elected to each branch of the General Assembly.

As we have already seen, counsel for appellants contend that the case does not fall under the provisions of the section of the Constitution construed in the Oliver case, but that, if it does, the indebtedness provided for is a claim under preexisting law, and requires only a majority of the votes cast on the bill to pass it.

In the Belote case the court had under consideration article 5, § 31, of the Constitution, which reads as follows:

"No State tax shall be allowed, or appropriation of money made, except to raise means for the payment of

the just debts of the State, for defraying the necessary expenses of government, to sustain common schools, to repel invasion and suppress insurrection, except by a majority of two-thirds of both houses of the General Assembly.''

The Legislature had appropriated money for the purpose of exhibiting the resources of the State at the Panama-Pacific Exposition. The act appropriated $40,000 for that purpose, but it did not receive a two-thirds majority of those voting thereon in the House of Representatives. The court held that, under our system of government, the Senate and the House are separate and independent bodies, and each votes separately on every bill presented to it. Therefore it was held that the bill did not legally pass, because it was not a necessary expense of government, and did not receive a two-thirds majority of those voting on it in each branch of the General Assembly. Citizens of the State advanced the necessary money to pay for the exhibit of the natural resources of the State at the exposition, and, at a subsequent session of the Legislature, asked for an appropriation to reimburse them for the amounts expended. The act did not receive a two-thirds majority of the members elected to each branch of the General Assembly. In a test case, which was appealed to this court, *Oliver* v. *Southern Trust Co.,* 138 Ark. 381, 212 S. W. 77, it was contended that citizens who advanced the money had claims under a preexisting law, and that the appropriation to reimburse them need only pass by a majority vote of those cast on the bill. They insisted that the original appropriation bill which came up for construction in the Belote case made their claim for reimbursement one under a preexisting law. The court held that the first act was essentially an appropriation act, and did not have the effect to make the subsequent claims for reimbursement claims under preexisting laws within the meaning of article 5, § 27, of the Constitution.

We are of the opinion that the outstanding indebtedness incurred prior to January 1, 1927, mentioned in the

act under consideration, does not fall within any of the provisions of § 27, article 5, of the Constitution. It is certainly not extra compensation made to any officer, agent, employee, after the service shall have been rendered or the contract made. On the other hand, the indebtedness claimed to be due was reduced to judgment, and was for an amount due under contracts made with improvement districts. It is not money appropriated or paid on a claim either provided for by preexisting law or the subject-matter of which shall not have been provided for by preexisting law. In other words, it is not a claim at all. It is a bill passed in aid of road improvement districts which had been legally formed under laws passed by the Legislature. That this view is correct will be seen by the reasoning of the court in the following cases: *Cone* v. *Hope-Fulton-Emmett Road Improvement District,* 169 Ark. 1032, 277 S. W. 544; *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9; and *Arkansas State Highway Commission* v. *Kerby,* 175 Ark. 652, 300 S. W. 377.

In the Cone case the court said that the statute, which was in aid of the taxpayers of road districts and the bondholders thereof, had set apart a portion of the revenue to be applied on the payment of said bonds, and that such act on the part of the sovereignty was a gratuity rather than a contract. The court pointed out that the State, unless inhibited by some constitutional provision, had, by its Legislature, full power over all matters of taxation, and the collection and disbursements of taxes, and might exercise absolute control over all revenue collected by subordinate branches of the State Government. Therefore it was held that the act in aid of the payment of the bonds of this road district was in the nature of a donation to them. This being true, the amount donated could in no sense be considered as claims against the State.

We can illustrate our meaning by an application of the principles of law decided in *Compton* v. *State,* 38 Ark. 601. In that case Compton had been employed by the

Governor to assist the Attorney General in the foreclosure of a mortgage against a railroad, and was to receive $5,000, to be paid out of the sum recovered. Upon appeal to this court it was held that the State's attorney had no lien on the judgment recovered, and that Compton must look to the Legislature for his compensation. The court recommended that the Legislature should make an appropriation for the compensation, because the State had profited by his labors, his learning, and his experience, and it was only bare justice to recompense him. Now, we think it results from the reasoning of the court in that case that the Governor had the inherent power to employ Compton, but that he had no power to employ him so as to give him a lien on the judgment recovered. If Compton had presented his claim to the Legislature, it would have been only necessary to pass a bill appropriating the money to pay it by a majority of those voting on the question, because, if the Governor had the inherent power to employ him, he had a claim against the State under a preexisting law, just as much as if the Legislature had passed a statute authorizing the Governor to employ him before he did so. On the other hand, if Compton had been employed by the Attorney General without any statute authorizing him to do so, his employment would have been outside of the jurisdiction of the Attorney General, and would have been illegal. Under these circumstances, a bill to appropriate money to pay his claim must have been passed by two-thirds of all the members elected to each branch of the Legislature, because it was not a claim which had been provided for by a preexisting law.

In this view of the matter, appellants in the case at bar did not have any kind of a claim against the State. As already pointed out, the act of the State in appropriating money to pay the indebtedness of the various road districts was in the nature of a donation, and was not the result of any obligation which had been incurred or attempted to be incurred by the State itself. It is only

in cases where the State has incurred an obligation, or attempted to do so, that a party can be said to have a claim against the State, within the meaning of article 5, § 27, of the Constitution.

The court has held valid the acts of the Legislature appropriating money for the payment of the bonds of the various improvement districts which had begun or completed the construction of the improved roads authorized by the laws creating them. No useful purpose could be served by again giving the reasons for so holding. It is obvious that, if the Legislature had the power to appropriate money to pay the outstanding bonds of these road improvement districts, it would also have the authority to appropriate money to pay any other valid indebtedness incurred by said districts in the accomplishment of the purposes for which they were organized.

It is next insisted that the act under consideration is unconstitutional because it violates the provisions of article 5, § 23, of the Constitution, which provides that no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only.

Section one of the act provides that the Highway Commission shall ascertain the amount of any valid outstanding indebtedness incurred prior to January 1, 1927, against any road improvement district in the State organized prior to the passage of act 11 of the Acts of 1927, and shall draw vouchers to be paid out of the appropriation already provided for in act 18 which had been previously passed by the Legislature of 1929, appropriating money for the payment of road district bonds and interest obligations.

The framers of the Constitution meant only to lay a restraint upon the Legislature where the bill was presented in such form that the members could not determine what its provisions were from an inspection of it. Here, no confusion would result to the Legislature in the premises. Both statutes were passed at the same session of

the Legislature, but it is apparent from reading them that act 18 and act 153 are original statutes in form, and complete in themselves. The two statutes are separate and distinct legislative enactments, and each had its appointed sphere of action. No alteration, change or repeal of the one would affect the other. We are of the opinion that an act complete in itself, and which would not mislead the members of the Legislature is not within the evils to be remedied by this provision of the Constitution, and cannot be held to be prohibited by it without violating its plain intent. *Watkins* v. *Eureka Springs,* 49 Ark. 131, 4 S. W. 384; *Common School District* v. *Oak Grove Special School District,* 102 Ark. 411, 144 S. W. 224; *State* v. *McKinley,* 120 Ark. 165, 179 S. W. 181; and *Farris* v. *Wright,* 158 Ark. 519, 250 S. W. 889.

It is next contended that the act under consideration is not an appropriation act, or that, if it should be construed to be an appropriation act, it is also an appropriation by reference, which is prohibited by the section of the Constitution just referred to. An appropriation need not be made by any set words. It is the setting apart from the public revenues of a certain sum of money for a specific object in such manner that the executive officers of the government are authorized to use that money, and no more, for that object, and no other. *Clayton* v. *Berry,* 27 Ark. 129; *Jobe* v. *Caldwell,* 93 Ark. 503, 93 S. W. 503; *Dickinson* v. *Clibourn,* 125 Ark. 101, 187 S. W. 909; and *Conner* v. *Blackwood,* 176 Ark. 139, 2 S. W. (2d) 44.

Act 18 was approved February 13, 1929, Acts of 1929, vol. 1, p. 26. Section 7 makes the biennial appropriation to retire road district bonds and interest assumed by the State. Section 8 makes it the duty of the Highway Department auditor to certify amounts necessary to go to road districts each year, and for certificates of indebtedness.

Act 153 is an act for the payment of outstanding debts other than bonds from road district bond allot-

ment by counties, and was approved March 20, 1929. It expressly provides for vouchers to be paid out of the appropriation already provided for in Act No. 18 of the same Legislature. It contains proper direction to the proper officers to pay money out of the treasury for a given object, and constitutes an appropriation to pay the debts of the road districts which had been incurred prior to January 1, 1927, out of the appropriation which had already been made for the payment of the bond indebtedness of said road districts. This view of the matter has been adopted by the court in the following cases: *Jobe* v. *Caldwell,* 93 Ark. 503, 125 S. W. 423; *Hudson* v. *Higgins,* 175 Ark. 585, 299 S. W. 1000; and *Conner* v. *Blackwood,* 176 Ark. 139, 2 S. W. (2d) 44.

In the Jobe case the court sustained an appropriation to pay an award in favor of Caldwell & Drake by the Capitol Commission out of money appropriated out of the Capitol Fund. So, too, in the other cases just cited, the same principle of law was applied.

It cannot be said that act 153 violates article 5, § 29, of the Constitution, which provides that no money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents. Both act 18 and act 153 are specific appropriation acts. Each act is complete in itself. Act 153 expressly grants the power to the Highway Commission to ascertain the amount of any valid outstanding indebtedness incurred prior to January 1, 1927, against any road district in the State of Arkansas, and to pass on its merits, and refers to act 18 for the purpose of pointing out the procedure to be exercised in executing the power conferred, and that was, after ascertaining the amount due, to pay the same out of the amount appropriated by act 18. That act expressly states the maximum amount which is appropriated for the purposes specified in the act, and this maximum amount determines the total

amount which may be expended under the provisions of act 18 or act 153.

The latter act sets apart or assigns to a particular use of a kindred kind a sum of money out of a specific appropriation made by the first act, the maximum of which is stated in that bill. That is to say, it is for the payment of certain indebtedness of various road districts which had not been included in act 18. The appropriation is specific as to the purpose for which it is to be used. It is specific as to the time of payment, and as to the fund out of which it shall be paid. This was sufficient to constitute a valid appropriation.

The result of our views is that the decree of the chancery court and the judgment of the circuit court were wrong. The chancery court should have overruled the demurrer to the complaint of appellant and the interveners in that case, instead of sustaining it. It was decreed that the complaint of each one should be dismissed for want of equity; and for the error in so holding the decree must be reversed, and the cause will be remanded with directions to the chancery court to compel appellees to carry out the provisions of act 153, and for further proceedings in accordance with the principles of equity, and not inconsistent with this opinion. In consolidated case No. 1373 the judgment will be reversed, and the cause will be remanded with directions for further proceedings in accordance with the principles of law decided in this opinion.

It is so ordered.