URQUHART *v.* STATE.

Opinion delivered January 27, 1930.

*Pace & Davis* and *Tom W. Campbell*, for appellant.

*Hal L. Norwood*, Attorney General, and *Walter L. Pope*, Assistant, for appellee.

SMITH, J. The General Assembly, at its regular 1929 session, passed an act No. 120, entitled "An Act to provide for the quieting of the title of the State of Arkansas to the Cummins and Maple Grove plantations in Lincoln County, and for other purposes." Volume 1, Acts 1929, page 620.

The act is preceded by a preamble which recites: On November 21, 1902, the Board of Commissioners of the Arkansas State Penitentiary entered into a contract with Edmond Urquhart, on behalf of the State, to purchase two adjoining plantations, known as the Cummins plantation and the Maple Grove plantation, to be used as a State convict farm. That all the purchase price except a small balance has long since been paid, and the State is ready and willing to pay the balance upon the execution and delivery to the State of a good and sufficient deed conveying said lands. That Urquhart, since the execution of said contract, has died, leaving his widow and two daughters as his sole heirs and sole devisees, under his last will and testament. That said widow and heirs and devisees, on September 28, 1910, tendered a deed conveying said lands, in which the descriptions of the lands differed slightly from those appearing in the original contract of sale (the difference being stated), and the penitentiary board refused to accept said deed, or to pay the balance of purchase price, on account of this difference in the descriptions of the lands. That, upon the refusal of the board to accept the deed, the Urquhart heirs and devisees brought suit in the chancery court to reform and correct the contract, alleging that a clerical error had been made in the draft of the contract (the error being

recited) ; that the chancery court, after hearing testimony, granted the relief prayed, and directed the reformation of the contract of sale, and an appeal was prosecuted from this decree to the Supreme Court, where the decree of the chancery court was reversed. *Jobe* v. *Urquhart*, 98 Ark. 525, 136 S. W. 663. That, on account of the failure to hear the matter on its merits, the controversy has never been adjusted, and the State has never received a deed to any of the lands.

After this preamble, it was enacted that the attorney general of the State be authorized and directed to institute suit against the widow and heirs and devisees of Urquhart, to quiet and confirm the title of the State to these two plantations, and the duty was imposed upon the court to find and determine whether there remained unpaid by the State any balance of either principal or interest, and the amount thereof, if any. A right to appeal was given both parties from any decree that the court might enter.

By § 2 of the act, the sum of $27,000, or so much thereof as might be necessary, was appropriated out of the penitentiary fund in the State treasury, to pay the widow and heirs and devisees of Urquhart ''any balance, of principal or interest, that the said court may find to remain unpaid under the contract of purchase, * * * according to the terms and tenor of said contract.''

Section 3 of the act contains what is declared to be a correct description of the lands, comprising, in the aggregate, 8,136.78 acres, less certain portions of the lands described, which had caved into the Arkansas river, and including the accretions to other lands. This section further provided that, after the court had ascertained the balance of principal and interest due, the widow and heirs and devisees of Urquhart might, at any time after ninety days, but within one year, exhibit to the Auditor of the State of Arkansas a certified copy of such decree, and a deed to the lands described, whereupon the Auditor was directed to draw his voucher upon the State treasurer for the amount of the principal and interest so found due.

Section 4 contained provisions for putting the decree into effect, but barring the widow and heirs and devisees of Urquhart, if they did not, within one year after the rendition of the decree, present the deed as there directed.

Suit was brought by the Attorney General pursuant to the authority of this act; and an answer was filed by the widow and heirs and devisees of Urquhart, in which they tendered a deed conforming to act 120 of the Acts of 1929, upon compliance with the act by the State officials charged with the duty of executing its provisions.

Testimony was heard, and the court found that there remained unpaid a balance on the principal of the purchase money in the sum of $10,416.64, and a balance of interest upon said purchase price of $17,470.53, making an aggregate balance of $27,887.17. Upon this finding of fact, the court held that the balance of the purchase money should be paid in the manner provided by act 120, but that the interest could not be lawfully paid out of said appropriation for the reason "that said act, purporting to make said appropriation, undertook to appropriate money for the purpose of paying any unpaid balance upon the principal of said purchase price of said lands, and also money for the purpose of paying any unpaid balance of the interest upon the purchase price of said lands, said balance of principal being a part of the ordinary expense of the executive department of the State, and the said balance of interest not being a part of the ordinary expenses of any department of the State, for that reason no appropriation for the payment of said interest could have been lawfully made, except in a separate bill, under the provisions of § 30, art. 5, of the Constitution of the State of Arkansas." Upon the court finding that the balance of principal and interest due was in excess of the appropriation, the widow and heirs and devisees of Urquhart remitted the excess, and offered to deliver a deed conforming to act 120, if the amount of the appropriation was paid to them, and they have appealed from so much of the decree as holds the balance of interest upon the

purchase price of said lands cannot be lawfully paid out of the appropriation contained in said act 120.

The legislation and litigation here under review covers a period of time, which began June 4, 1897, when the act was passed under the authority of which the plantations were purchased from Urquhart. The penitentiary board, as then constituted, comprised the chief executive officers of the State, including the Governor, and the Attorney General, and these officers, in the name of, and on behalf of, the State, entered into a contract whereby the State agreed to pay interest on the unpaid purchase money. It is true the court held in the case of *Jobe* v. *Urquhart,* 102 Ark. 470, 143 S. W. 121, Ann. Cas. 1914A, 351, that the agreement to pay interest was in excess of the power conferred by the act under which the lands had been purchased; but it is also true that this agreement imposed a moral—if not a legal—obligation upon the State, for the reason that, had it been known that interest could not be paid on deferred payments, the owner would probably have taken that fact into account in fixing the price for which he would sell his lands.

The case of *Jobe* v. *Urquhart,* 102 Ark. 470, 143 S. W. 121, Ann. Cas. 1914A, 351, arose under act 21 of the Acts of 1909 (Acts 1909, page 1218), which was an act entitled, "An Act making an appropriation to pay the balance owing the estate of E. Urquhart on the State Convict Farm." The Urquhart heirs had, in that case, attempted, by mandamus, to compel the Auditor of State to audit and adjust the account, and the circuit court awarded the writ, but the judgment was reversed on the appeal. In the opinion, while it was held that the act of June 4, 1897, did not authorize the board of penitentiary commissioners to contract to pay interest, it was held that the Legislature had the power to bind the State to pay interest upon a claim which, according to the pre-existing law, bore no interest.

It was also held in that case (to quote one of the headnotes) that "Under Const. 1874, art. 5, § 26, pro-

viding that no money shall be appropriated or paid on any claim, the subject-matter of which shall not have been provided for by pre-existing laws, unless allowed by bill passed by two-thirds of the members elected to each branch of the General Assembly, an act in effect authorizing the Auditor to calculate the amount of interest due by the State to a claimant, not passed by two-thirds of the members of both branches of the Legislature, is void.''

It appeared, from the recital of facts in that case, that it was shown by the journal of the House of Representatives that the bill did not receive a two-thirds vote of all the members of the House elected, as required by the Constitution, and it was therefore held that the part of the act attempting to appropriate a sum of money to pay interest, for which the State was not legally bound, was void. But the court expressly recognized this as a claim, for which an appropriation could be made to pay by a vote of two-thirds of the members elected to each branch of the General Assembly.

For a further discussion of the law on this subject, see *Grable* v. *Blackwood, ante* p. 311, 22 S. W. (2d) 41.

Here it is conceded that the act of 1929 received the vote which the court said, in *Jobe* v. *Urquhart,* 102 Ark. 470, 143 S. W. 121, Ann. Cas. 1914A, 351, was required under the Constitution; in fact the vote was unanimous in both House and Senate, except that one negative vote was cast in each body, but it is insisted that the act did not conform to the requirements of § 30 of art. 5 of the Constitution, in that, as the payment of the purchase money was an ordinary expense of government, which might have been passed by a majority vote, the appropriation for interest was not such an expense, and should have been provided for in a bill making a separate appropriation for this purpose only.

Section 30 of article 5 of the Constitution reads as follows: ''The general appropriation bill shall embrace nothing but appropriations for the ordinary expense of the executive, legislative and judicial departments of the

State; all other appropriations shall be made by separate bills, each embracing but one subject.''

The appropriation here involved was not made in the general appropriation bill, but was in fact made in a separate bill, which embraced but one subject, this being an adjudication of the controversy between the State and the Urquhart heirs. The Legislature itself might have ascertained the amount, both of principal and interest, and have made an appropriation accordingly, but it elected to constitute another agency to make this finding of fact, and made an appropriation in what was assumed to be a sufficient amount to pay both the principal and the interest, and, under the remittitur which has been entered, the appropriation is sufficient.

In the case of *State* v. *Sloan*, 66 Ark. 575, 53 S. W. 47, 74 Am. St. Rep. 406, it was held (to quote a headnote) that ''Under the provision of the Constitution that all appropriations, other than for the ordinary expenses of the government, 'shall be made by separate bills, each embracing but one subject' (Const. 1874, art. 5, § 30), the unity of the subject of an appropriation bill is not broken by appropriating several sums for several specific objects, which are necessary or convenient to the accomplishment of one general design, notwithstanding other purposes than the main design may thereby be subserved.''

We conclude, therefore, that act 120 does not offend against § 30 of art. 5, and that the court was in error in so holding.

The question is raised here that act 120 is in violation of the amendment to the Constitution, which provides that ''The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts.''

Act 120 is neither a local nor special act within the meaning of this amendment. It is an exercise of the State's sovereignty in settling a controversy with one of its citizens, and such acts are neither local nor special.

*State* v. *Crawford*, 35 Ark. 237. See also other cases cited in the opinion on rehearing in the case of *Webb* v. *Adams, ante* p. 713.

At § 34 of the chapter on States, in 25 R. C. L., page 402, it is said: ''The Legislature has a right to appropriate the public funds in discharge of the State's duty, whether the duty be legal or only moral. And the discharge of such an obligation is always regarded as a legitimate exercise of governmental power. An appropriation, made in discharge of a moral obligation resting upon the State, must be regarded as being for a public purpose, and within the constitutional powers of the Legislature, and the fact that a private person may receive the benefit of such an appropriation does not constitute the act of appropriation a private one.''

The decree of the court below will therefore be reversed, and the cause is remanded, with directions to enter a decree conforming to the provisions of act 120, which we hold to be valid in all respects.