ARKANSAS STATE HIGHWAY COMMISSION *v.* DODGE.

Opinion delivered April 7, 1930.

540

*Hal L. Norwood,* Attorney General, *Claude Duty* and *Walter L. Pope,* Assistants, *Pace & Davis* and *Tom W. Campbell,* for appellant.

*W. E. Spence, Dudley & Dudley* and *Charles D. Frierson,* for appellee.

SMITH, J. E. L. and E. W. Lahar, partners doing business under the firm name of Lahar Brothers, brought this suit in the Pulaski Chancery Court against the chairman and members of the Arkansas State Highway Commission, and for their cause of action alleged the following facts:

That they had entered into a written contract with the State Highway Commission to construct certain portions of the State highway system, pursuant to which they had earned a large sum of money, which was payable to them under their contract, but the commission had refused to make proper estimates of the work and had declined to issue vouchers upon the State treasury, as they were in duty bound to do, whereby the plaintiffs were deprived of the compensation legally due them. Wherefore they prayed that a master be appointed to state the account between themselves and the highway commission, and that they have judgment for the amount alleged to be due them.

The commission filed a demurrer to the complaint upon the ground "that the plaintiffs are without right to file and maintain this suit, because it is in reality a suit against the State of Arkansas, and is prohibited by § 20, of article 5, of the Constitution of the State of Arkansas, and the court is therefore without jurisdic-

tion to hear and determine the complaint filed herein, because it is a suit against the State of Arkansas and prohibited by said section of the Constitution of the State of Arkansas.''

The demurrer was overruled, whereupon the defendants filed in this court a petition for a writ of prohibition to prevent the chancery court from proceeding further with or exercising jurisdiction in said cause.

The practice is well settled that, when it appears that an inferior court is about to proceed in a matter over which it is entirely without jurisdiction under any state of facts which may be shown to exist, then the Supreme Court, exercising supervisory control over the inferior court, may prevent such unauthorized proceeding by the issuance of a writ of prohibition. *Monette Road Imp. Dist.* v. *Dudley,* 144 Ark. 169, 222 S. W. 59.

Section 20 of article 5 of the Constitution reads as follows: ''The State of Arkansas shall never be made defendant in any of her courts.''

The argument is made that this provision of the Constitution is declaratory merely of what has always been the law, and that it means simply that the State may not be sued in her own courts without her consent. We think, however, that the purport of the language quoted is not to be thus limited. Numerous States have the provision in their Constitution that no suit shall be brought against the State except with its consent, and it is, of course, held in those States that suits may be brought when consent is given, but that such suits must be brought in the forum provided and be prosecuted in the manner authorized, and in no other forum or manner.

Our Constitution is not, however, merely declaratory of this attribute of sovereignty. It goes further and declares that the State shall never be made defendant in any of her courts, and nowhere is provision made under the Constitution whereby this immunity may be waived. *Pitcock* v. *State,* 91 Ark. 535, 121 S. W. 742, 134 Am. St. Rep. 88.

The Constitution of Alabama contains a provision almost identical with that of our own Constitution on this subject, and in the case of *Alabama Industrial School v. Addler,* 144 Ala. 555, 42 Sou. 116, 113 Am. St. Rep. 58, it was held (to quote a headnote): "If the Constitution contains a prohibition against the State being made a party defendant to any suit, and does not provide for any waiver of such exemption, the Legislature has no power to pass a law permitting such waiver, nor can the State or its agent waive such exemption by failure to plead to the jurisdiction or otherwise." We feel constrained to give the same construction to the same provision in our own Constitution.

The question for decision, therefore, is, whether the suit which we are asked to prohibit is, in fact, a suit against the State.

Any answer to this question requires a consideration of the statutes under which the contracts sued upon were executed. At its 1929 session the General Assembly passed an act entitled, "An Act to amend and codify the laws relating to State highways." 1, Acts 1929, p. 264. This act recreated the State Highway Commission, and the commission as recreated by the act of 1929 consists of five members, with a chairman, vice-chairman and a secretary. This act declared it to be the policy of the State "to take over, construct, repair, maintain and control all the public roads in the State comprising the State highways as defined hereinafter," and authority was given to make such contracts as were needful for these purposes. By act No. 18, passed at the 1929 session of the General Assembly (1, Acts 1929, p. 26), the sum of fifteen million dollars was appropriated for the construction of roads and bridges embraced in the State highway system for the fiscal year beginning March 1, 1929, and ending the last day of February, 1930, and a similar appropriation was made for the fiscal year beginning March 1, 1930, and ending the last day of February, 1931, and the act placed this money at the disposal of the

commission, to be disbursed in the manner therein provided. These acts·were a continuation of the policy of road construction adopted by the State upon the passage of act No. 11 of the Acts of 1927 (Acts 1927, page 17), commonly known as the "Martineau Road Law," which act appropriated large sums of money to effect its purposes.

Upon the passage of the Martineau Road Law, and in the execution of its provisions, numerous suits arose, which hampered the work of the commission, and at the extra session of the General Assembly an act, No. 2, was passed and approved October 3, 1928, entitled, "An act to require bonds in certain suits affecting the administration of the State highway laws." Section 1 of this act reads as follows:

"Suits against the State Highway Commission, the State Highway Note Board, the members or any member of either, or against any State officer, involving any act done or proposed to be done in the administration of the State Highway Department, or of any law pertaining to the State highway system, shall be brought only at the seat of government in Pulaski County."

This act, passed at a special session called for the special purpose of considering the State's road-building program, recognized the existence of pending suits, and the probability of others being brought, and fixed the venue thereof at the seat of government, in Pulaski County, where the highway commission has its domicile and keeps its records.

While this special act did not designate the highway commission as a corporation, it was recognized as an entity, a juristic person, created for the purpose of making contracts for the distribution of the large sum of money which had been appropriated, and which it was anticipated would be later appropriated in constructing, maintaining, and repairing roads, and for other purposes. The highway commission was given no authority in the acts to which we have referred to make contracts in the name

of the State. Its authority was limited to the making of contracts relating to the specific appropriations which had been made to discharge the contracts which the commission was authorized to make. The special act of 1928 contemplated that differences might arise between the contracting parties, and to take care of such controversies a forum was provided wherein and whereby these differences might be settled.

In the proceedings there provided for a judgment might be rendered fixing a liability against the highway commission, but a judgment so rendered would not be a judgment against the State as such, and could not be enforced by the seizure or sale of the property of the State, as a judgment could be enforced against a private litigant. Satisfaction can be had only out of the fund specifically appropriated for the purpose in regard to which the highway commission was authorized to contract.

The appropriation for the use of the commission is a fund set aside for a specific purpose. The highway commission is an entity, or juristic person, created to disburse this money in payment of work which it is authorized to contract for, and, while the appropriation was not made specifically to satisfy judgments rendered against the commission, it was contemplated that judgments might be rendered, and the appropriation is the State's provision for their payment. It was not contemplated that the highway commission should accede to every demand of every contractor, yet it was contemplated that in the expenditure of a sum of money so large the highway commission, in its zeal to protect the fund, might take positions which, if persisted in, would work injustice to some contractor, who could not sue the State as such. Therefore, a forum was constituted where these differences might be adjusted according to applicable legal principles, this forum being the courts at the seat of government in Pulaski County.

A judgment rendered pursuant to this act would not be a "judgment against the State." It would be only an

adjudication that the sum adjudged was due on the contract out of which the litigation had arisen, to be paid out of the appropriation made for this and other purposes.

It may be said that § 20 of article 5 of the Constitution of the State gave the State no immunity which it would not otherwise have had, and that this immunity is absolute, with the exceptions named in the Federal Constitution, which are not applicable here. And it is also well settled that this immunity applies, not only where the State is actually named as a party defendant on the record, but to cases where the proceeding, though nominally against an officer of the State, is really against the State itself, or is one to which the State is an indispensable party. And, as was said by Mr. Justice Lamar, speaking for the Supreme Court of the United States in the case of *Hopkins* v. *Clemson College*, 221 U. S. 636, 31 S. Ct. 654, "No suit, therefore, can be maintained against a public officer which seeks to compel him to exercise the State's power of taxation; or to pay out its money in his possession on the State's obligations; or to execute a contract, or to do any affirmative act which affects the State's political or property rights."

However, as we have attempted to show, the purpose and effect of this litigation is not to impose an obligation affecting the State's political or property rights. The obligation exists independently of the suit, and was incurred when the highway commission made the contract which the law authorized it to make, and the purpose of the suit is one to ascertain the extent of the obligation thus incurred. No one would question the power of the highway commissioners to adjust the differences out of which this litigation arose, and to draw warrants against the appropriation in settlement of the agreement reached without additional legislation authorizing them so to do, and this is true because the State has already, and in advance, appropriated money for this purpose. The State has conferred express authority upon the commis-

sion to make contracts, not in the name of the State, but in its own name, like the one here involved, and has appropriated money to discharge such contracts, and when the obligations of such contracts has been ascertained and discharged no burden is imposed upon the State which it had not previously assumed.

In the recent case of *State Highway Commission of Wyoming* v. *Utah Construction Co.*, 278 U. S. 194, 49 S. Ct. 104, it was held that a suit, based upon a contract made by the highway commission of the State of Wyoming was in effect and in fact a suit against that State, and that, as a State was not a citizen under the judiciary acts of the United States, there was no such diversity of citizenship as gave the plaintiff, a citizen of another State, the right to maintain the suit. But the contract there sued on was executed in the name of the State of Wyoming, whereas the contract here sued on was made by and in the name of the agency or entity designated by the General Assembly to expend the appropriation through contracts made for that purpose.

The instant case is somewhat similar to the recent case of *Urquhart* v. *State*, 180 Ark. 937, 23 S. W. (2d) 963. As appears from the facts stated in that case, the point really in issue was the extent of the liability of the State for interest upon a contract to purchase a State convict farm, and the sufficiency of the appropriation and the manner of its passage to discharge the obligation when its extent was adjudged by the courts of Pulaski County, the agency created for that purpose. Upon this feature of the case we there said: "The Legislature itself might have ascertained the amount, both of principal and interest, and have made an appropriation accordingly, but it elected to constitute another agency to make this finding of fact, and made an appropriation in what was assumed to be a sufficient amount to pay both the principal and the interest, and, under the remittitur which has been entered, the appropriation is sufficient." It is true that suit was brought by the State, as the act

provided it should be, but the act also provided that the State's vendor might litigate his claim for interest, and that either party should have the right to appeal from an unfavorable decision.

The instant case is more like that of *Grable* v. *Blackwood*, 180 Ark. 311, 22 S. W. (2d) 41. The facts in that case were that Grable brought suit in the Pulaski Chancery Court (and another claimant in the Pulaski Circuit Court) against the State Highway Commission and the individual members thereof to enforce the payment of an outstanding indebtedness incurred prior to January 1, 1927, against a road improvement district duly organized under the laws of the State of Arkansas. We there said that the right to recover depended upon the construction to be given act 153 passed by the Legislature of 1929 (1, Acts of 1929, p. 785). Section 1 of this act provided: "That the highway commission shall, as soon as possible, ascertain the amount of any valid outstanding indebtedness incurred prior to January 1, 1927, against any road district in the State of Arkansas, organized prior to the passage of act No. 11 of the acts of the General Assembly of the State of Arkansas for the year 1927, * * * and shall draw vouchers to be paid out of the appropriation already provided for in act No. 18 of the Forty-seventh General Assembly for the payment of road district bonds and interest obligations; such vouchers shall be delivered to the person authorized to receive the same, on proper satisfaction of such indebtedness * * *."

We there held that, while the provision for the payment of the claim involved in that case was a donation, we also held that a person holding a claim of the class described might maintain a suit against the highway commission to enforce it, although the funds out of which Grable and the other plaintiff demanded payment were derived from the identical source out of which the plaintiffs here ask payment, and all of it was the money of the State.

We did not treat the Grable case as a suit against the State, although its purpose was to compel the highway commission to pay out the State's money. But we treated the appropriation as being a legislative declaration that the merit of the claims had been passed upon and approved and the appropriation itself as the provision of the State for the discharge of the demand.

In that case the appropriation, so far as Grable and similar claimants were concerned, was a donation. Here the plaintiffs assert contractual obligation against the highway commission itself, and they seek to require the commission to devote a portion of the fifteen million dollar appropriation to the purpose for which it was all intended, to-wit, the payment of the obligations of the highway commission incurred in the construction of the State highway system. The appropriation for this purpose has already been made, and the plaintiffs here are not seeking to impose an obligation upon the State; they pray, rather, that the highway commission devote the fund for the purpose intended by discharging the obligation of the contract which the Legislature had previously authorized the highway commission to make. See, also, *Arkansas State Highway Commission v. Kerby,* 175 Ark. 652, 300 S. W. 377.

In this controlling respect the instant case is identical with the Grable case, and we can perceive no sound distinction between Grable's right to sue the highway commission, and thereby compel it to pay his claim, and the right of the plaintiffs here to sue. The object of both suits is identical, that is, to consummate the purpose of the appropriation, which, in one case, was to make a donation, and, in the other, to comply with contracts which the highway commission had been authorized to make and had made in its own name.

The case of *State ex rel. State Highway Commission of Missouri v. Bates, Circuit Judge,* 317 Mo. 696, 296 S. W. 418, involves a principle which the writer and Justice MEHAFFY think should be applied and is control-

ling here, and for that reason we quote somewhat extensively from the opinion in that case, which was a unanimous opinion of the Supreme Court of Missouri sitting in banc.

That case involved two suits against the State Highway Commission, damages being claimed in each arising out of contracts entered into by the plaintiffs with the State Highway Commission. One of these suits was brought in the county where the construction contract was performed; the other in the county where the highway commission had its domicile and kept its records—the county in which the State capitol was located.

The opinion begins with a quotation from a former opinion of the Supreme Court of that State, where Justice Lamm, speaking for the court, had said: "That the sovereign State may not be sued is a truism," and while it was added that the sovereign may, by law (under the Constitution of that State), give consent to the citizen to sue it, the point was expressly decided and made the basis of the decision that the suit was not in fact against the State. Immunity from the suit was claimed by the highway commission in that case upon the ground that, as it was an agency of the State, a suit against it was, in fact and in effect, a suit against the State, and could not be maintained for that reason.

In overruling the contention that a suit against the State Highway Commission was a suit against the State, Mr. Justice Graves, speaking for a unanimous court, said:

"It (State Highway Commission) is an entity, with powers of a corporation, established and controlled by the State for a specific public purpose, but that does not make this legal entity the sovereign State. No contract it is authorized to make is made in the name of this State, but in the name of the commission. The sovereign State could have contracted for the building of its public highways in its own name, but it chose to create a legal entity for this work. This act gave to this legal entity no part of the State's sovereignty, but authorized it to proceed

to do certain work which the State could have done by private contract made direct with the State. Thus it has been well said in 14 C. J., at page 75:

" 'Although a corporation may be public, and not private, because established and controlled by the State for public purposes, it does not necessarily follow that such a corporation is in effect the State, and so not subject to the rules of law governing other corporations, for the State may, by engaging in a particular business through the instrumentality of a corporation, divest itself *pro hac vice* of its sovereign character, so as to render the corporation subject to the rules of law governing private corporations. Thus, although incorporated banks, established by the State for its own public purposes and owned and controlled entirely by the State, are undoubtedly public corporations, it has been held that they are not for that reason invested with the attributes of sovereignty, but are mere corporations, and subject generally to the rules of law governing other corporations.' "

After incorporating into the opinion the above quotation from 14 C. J., the learned judge proceeded to say:

"Such is the status of this commission. It is not the State, but a mere entity created by the State, for the specific purpose of contracting for the building of State highways and bridges, and the maintenance of the same, and doing all other things pertaining thereto. In the language of Walker, J., in *State* v. *Board of Regents,* 305 Mo. loc. cit. 68, 264 S. W. 701, it was constituted 'a legal entity, without in anywise lessening the State's sovereignty.' It is in no sense entitled to immunity from suit, as is the State. In fact, the State, which created the commission, subjected it to be sued by express statutory provisions. If, on the other hand, it is in fact and in law the State, or the State's *alter ego*, the State has consented to suit being brought. The commission is not the State, with the State's sovereignty (or any part thereof), but is a mere creature of the State, created for the express purpose of performing a specific work. A case fully

in point is the case of *Gross* v. *Kentucky Board of Managers of World's Columbian Exposition,* 105 Ky. 840, 49 S. W. 458, 43 L. R. A. 703.''

The learned jurist then cites and reviews a number of cases to the effect that the State is not the real party where it has created a legal entity to do the things to be done.

So here, the State of Arkansas has not contracted to build roads. It has created an entity for that purpose, and has made appropriations in advance to discharge the obligations incurred in that behalf. Building roads is, of course, a public purpose, for the accomplishment of which the public revenues may be expended, but it is not a work in which only the sovereign State may engage. Other agencies may build roads, and do build them, such as cities and towns and counties and road improvement districts. Here the State has created an entity and conferred upon it power to make contracts, not in the name of the State, but in its own name, and has appropriated the money with which the obligations of these contracts may be discharged.

After holding that suit, based upon a contract made by the State Highway Commission, might be maintained against the commission, it was said by the Supreme Court of Missouri in the case from which we have quoted that the highway commission as an entity was in a class different from pure corporations, and that, as it was created for a purely public purpose, the State could provide the place of a suit against it and the manner of service, and that this was done by making the permanent domicile of the commission in Jefferson City—the State capitol—and that suit could, therefore, be brought only in the county in which the capitol was located. Here, as we have said, the special act of 1928 makes the courts of Pulaski County —the domicile of our highway commission—the forum in which suits must be brought..

There is nothing unusual about these contracts, and there is nothing in the legislation authorizing them to

warn a prospective bidder for one of them that they do not have the usual attributes of contracts, and are not mutually binding and enforcible. On the contrary, the State has created an agency or entity to engage in a business not necessarily related to any sovereign function, and the controlling question in the case is whether this agency may be compelled to perform its contracts, as the General Assembly, acting for the State, intended it should do when the power to contract was given, and as the commission unquestionably has the power to do without being sued. If the commission saw proper to perform the contract sued on, it has the power so to do without obtaining further authority from the General Assembly for that purpose, and we conclude, therefore, that it may be compelled to exercise this power if the applicable principles of the law of contracts enjoin this duty.

The opinion in the case of *Maryland Casualty Co.* v. *Rainwater*, 173 Ark. 103, 291 S. W. 1003, is not inapplicable here. The facts in that case were that State funds had been deposited in a bank which became insolvent, and it was claimed that the State had the right to enforce its demand against the assets of the bank in preference to other creditors, but in holding against that contention we there said: "The State, in making such deposit, was not exercising a governmental function, but only engaged in ordinary business. Its attitude with regard to the transaction was just such as might have been assumed by any individual or private corporation, which might have chosen to lend its money to the bank; and, as said in *Callaway* v. *Cossart*, 45 Ark. 88: 'When a State steps down into the arena of common business in concert or in competition with her citizens she goes divested of her sovereignty.' The State cannot presume, under such conditions, to exercise the ancient prerogative of the king and claim a preference in the repayment of her moneys loaned to, or deposited in, the failed bank, as against all other depositors and creditors thereof, having made no intimation or declared no intention in her laws relating

thereto that such would be done. She will be held to have waived or abandoned such prerogative right, which cannot be exercised under existing laws.''

. It is therefore the opinion of the writer and of Justice MEHAFFY that, for the reasons herein stated, the writ of prohibition should be denied, and as the Chief Justice and Mr. Justice HUMPHREYS concur on another ground, it is ordered that the petition for the writ be denied.

HART, C. J., and HUMPHREYS, J., concur.

KIRBY, McHANEY and BUTLER, JJ., dissent.

HART, C. J., (concurring). Judge Humphreys and myself concur in the judgment only.

The most difficult and perplexing question in the case is whether or not the present action is a suit against the State. On the one hand, it is claimed that the State Highway Commission is a legal entity with corporate powers and as such is subject to suit, as decided by the Supreme Court of Missouri in *State ex rel State. Highway Commission* v. *Bates,* 317 S. W. 696, 296 S. W. 418. On the other hand, it is claimed that the Highway Commission is an agency of the State, and not a separate body politic or corporate, and that a suit against the Commission is a suit against the State itself. *Looney* v. *Stryker,* 31 N. M. 557, 249 Pac. 112, 50 A. L. R. 1404; and *State Highway Commission* v. *Utah Construction Co.,* 278 U. S. 194, 49 S. Ct. 104.

· · This is a question which each State must decide for itself, and the opinion of the Supreme Court of the United States is only persuasive. In *Palmer* v. *State of Ohio,* 248 U. S. 32, 39 S. Ct. 16, the court said that the right of individuals to sue a State in either Federal or State courts cannot be derived from the Constitution or laws of the United States. It can only come from the consent of the State. In *Duhne* v. *State of New Jersey,* 251 U. S. 311, 40 S. Ct. 154, it was held that Federal courts have no jurisdiction of a suit brought by a citizen against his

own State without its consent. In *Ex parte State of New York,* 256 U. S. 490, 41 S. Ct. 588, the court said:

"That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given; nor one brought by citizens of another State, or by citizens or subjects of a foreign State, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the Amendment is but an exemplification."

In that case the court also said that it is now thoroughly settled that what is to be deemed a suit against a State is a question to be determined, not by the mere name of the titular parties, but by the essential nature and effect of the proceeding as it appears from the entire record. The court quoted from *Pennoyer* v. *McConnaughy,* 140 U. S. 1, 11 S. Ct. 699, to the effect that where the suit is brought against the officers of the State as representing the State's action and liability, thus making it, though not a party to the record, the real party against which the judgment will operate, the suit is, within the meaning of the Eleventh Amendment, an action against the State. So, too, where the suit operates so as to require the State to make pecuniary satisfaction for any liability, it would be a suit against the State. *Smith* v. *Reeves,* 178 U. S. 436, 20 S. Ct. 619.

It will be noted that in the case of *State Highway Commission of Wyoming* v. *Utah,* 278 U. S. 194, 49 S. Ct. 104, the court expressly held that a State is not a citizen, and that a suit between the State and citizens or corporations of another State is not within the jurisdiction of Federal courts as involving diversity of citizenship.

While, as above stated, we must be controlled by our own decisions on this question, still the opinion of

the Supreme Court of the United States on the identical question is very persuasive, and is, we think, in line with our own decisions on the question, and should be followed. The obligation to build and maintain adequate public highways, including bridges across rivers, devolves primarily on the State; and we have recognized that the State itself may discharge the obligation or delegate the duty to an subordinate agency. *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9.

In *Jobe* v. *Urquhart,* 98 Ark. 525, 136 S. W. 663, the court said that the penitentiary board was but an agency of the State, composed of certain officers thereof, for the conduct and maintenance of the State penitentiary, and that a suit against said board to reform a contract for the purchase of a State convict farm was in effect a suit against the State within the inhibition of the Constitution.

In the present suit a judgment against the Highway Commission would require the State to make pecuniary satisfaction for the liability, and we are of the opinion, that it is in effect a suit against the State. That this view is in accord with the principles declared by the Supreme Court of the United States will be further seen by a quotation from *Hopkins* v. *Clemson Agricultural College,* 221 U. S. 636, 55 L. Ed. 890, 31 Sup. Ct. Rep. 654, 35 L. R. A. (N. S.) 243, which reads as follows: "With the exception named in the Constitution, every State has absolute immunity from suit. Without its consent it cannot be sued in any court, by any person, for any cause of action whatever. And, looking through form to substance, the Eleventh Amendment has been held to apply, not only where the State is actually named as a party defendant on the record, but where the proceeding, though nominally against an officer, is really against the State, or is one to which it is an indispensable party. No suit, therefore, can be maintained against a public officer, which seeks to compel him to exercise the State's power of taxation, or to pay out its money

in his possession on the State's obligations, or to execute a contract, or to do any affirmative act which affects the State's political or property rights."

This brings us to a consideration of whether article 5, § 19 of the Constitution providing that the State of Arkansas shall never be made a party defendant in any of her courts contains a prohibition, or is merely declaratory of the general rule that a State may not be sued without its consent. See case notes to 42 A. L. R. p. 1465 and, 50 A. L. R. at p. 1408. The State of Alabama contains a similar clause in her Constitution, and it was held that the section was prohibitory, and that the Legislature could not enact a statute allowing the State to consent to a suit against itself. *Alabama Girls' Industrial School* v. *Adler,* 42 So. 116.

We do not consider that case as controlling. The State of Alabama had a clause in its Constitution which provided that no local law shall be passed unless notice of the intention to apply therefor should be published in the county where the matter to be effected was situated, which notice should state the substance of the proposed law, and be published at least once a week for four consecutive weeks in some publication in such county or counties, and the court held that the prohibition was mandatory, and that noncompliance with it rendered the act void. *Kumpe* v. *Irwin,* 140 Ala. 460, 36 So. 1024. The court said: "The journals do not affirmatively show that the act was passed in accordance with the provision of said section (Constitution) in which case the courts are required, without any discretion, to pronounce the act to be void."

This court, in construing a similar provision which is contained in article 5, § 27, of our Constitution, held directly to the contrary. In a long line of cases, beginning with *Davies* v. *Gaines,* 48 Ark. 370, 3 S. W. 184, this court has held that whether the notice was given was merely a legislative question. Again, in construing article 5, § 25, of the Constitution, which provides that

in all cases where a general law can be made applicable, no special law shall be enacted, the court has uniformly held that the section was merely cautionary to the Legislature, and that the Legislature was the judge of the necessity of a special statute.

It has been held that article 19, § 9, which provides that the General Assembly shall have no power to create any permanent State office not expressly provided for by the Constitution, falls within the class of provisions like that which forbids the Legislature to enact a special law where a general law can be made applicable (Const. article 5, § 24) and the court has held that class of provisions to be directory and merely cautionary to the Legislature. *Greer* v. *Merchants' & Planters' Bank,* 114 Ark. 212, 169 S. W. 802, and *Ft. Smith Dist. of Sebastian County* v. *Eberle,* 125 Ark. 350, 188 S. W. 821. We do not regard *Pitcock* v. *State,* 91 Ark. 527, 121 S. W. 742, as authoritative, because what was there said expressed the views of two of the judges only.

We are of the opinion that the better reasoning is to the effect that this section of the Constitution was not intended to be prohibitory, but that it was merely intended as a declaration that the State may not be sued without its consent. The reasoning for such a provision in a Constitution is well stated by Mr. Justice Holmes for the Supreme Court of the United States in *Kawananakoa* v. *Polyblank,* 205 U. S. 349, 27 S. Ct. 526, as follows:

"Some doubts have been expressed as to the source of the immunity of a sovereign power from suit without its own permission, but the answer has been public property since the days before the days of Hobbes (Leviathan c. 26, 2). A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends."

A sovereign State which enacts its own laws and creates its own courts and defines their jurisdiction is

of necessity exempt from the jurisdiction of these courts except by its own consent. We can perceive no good reason why a State should not consent to being sued in her own courts upon such terms and conditions as her Legislature might prescribe. We do not think that the consent can be given except by the Legislature, which alone can declare the public policy of the State. If the State is to exercise its sovereign power in building roads, and in constructing bridges across navigable streams, it would seem that there should be a tribunal somewhere, which might pass upon the claims of those with whom the agency of the State had contracted with reference to the matter, and what tribunal could be a more appropriate and safe guaranty of the equal protection of the laws than the courts established by the State for the protection of its citizens, and for such citizens who might come within its borders for pleasure or gain.

The general rule is that a State which consents to be sued may prescribe such methods, terms, and conditions as it sees fit. Case Note to 42 A. L. R. p. 1477. Among the numerous cases cited in support of the doctrine is that of *Auditor* v. *Davies,* 2 Ark. 494.

It is settled beyond controversy that the State cannot be sued in its own courts without its consent. In this case, the State, through the Legislature, has granted the right or privilege to claimants to institute actions against the State Highway Commission upon certain terms and conditions; and all persons or corporations seeking to avail themselves of the right or privilege so granted must do so subject to the terms and conditions which form a part of the right as granted by the Legislature. In other words, the suits instituted must be limited to such claims as are contemplated by the act authorizing the State to be sued. *State of Indiana* v. *Mutual Life Ins. Co.,* 175 Ind. 59, 93 N. E. 213, 42 L. R. A. (N. S.) 256, and cases cited.

In short, a sovereign State can only be sued by its own consent; and, when a claimant avails himself of the

consent, he must pursue the remedy in the court prescribed by the statute granting the privilege, and upon the terms and conditions as it is provided by the statute.

It must be remembered that it is conceded by all that, without regard to the constitutional provision under consideration, the Legislature may recognize the validity of any claim against the State and appropriate money to pay it; and that it would have the right to designate a subordinate agency such as a court of claims or other board to pass upon the validity of the claims.

Then, too, it will be seen from the case notes above cited that it is a rule of universal application that, in the absence of a provision on the subject, it is an inherent attribute of sovereignty that a State may not be sued without its consent; and many of the States have express provisions in their Constitutions authorizing the Legislature to pass laws waiving the State's immunity from suit; and such provisions have been held to be declaratory of the principle that a sovereign State is incapable of being sued without some legislative provision authorizing such a proceeding; and that the statute must be strictly followed, as stated in *Auditor* v. *Davies,* 2 Ark. 494; and this, it may also be stated, is the general rule on the subject. All these matters may draw the sting out of the minds of those who fear that the sovereignty of the State may be diminished, or that the efficiency of the State government may be lessened by permitting the Legislature to pass acts permitting the State to be sued in its own courts upon such terms and conditions as it might prescribe. It would put form above substance to say that the Legislature might not permit such suits to be brought in the courts created by the State, but could create other tribunals before whom such claims could be established. At least judicial adjudication is a safe and reasonable way to guarantee that a person shall not be deprived of his property without due process of law.

To sum up, it may be said that when the State Highway Commission was created to construct State roads

560

and was selected to make contracts to expend the State's money therefor, it became the State's agent to do so. Whether it be called a corporate entity, commission or board, it is none the less an agency of the State; for the State may only construct and improve public highways in the discharge of a sovereign function, and it can only exercise that power by committing the discharge of it to agencies selected by its Legislature for that purpose. Therefore, the contracts which the State Highway Commission enter into obligates the State and not the Highway Commission or its members. Actions against it are to all intents and purposes suits against the State. It is the State's property rights that will be affected by the judgment, and the State will be required to make pecuniary satisfaction for any liability. It seems to us that the State's sovereignty will be better preserved and protected by holding that a State may through its Legislature waive its immunity from suit and select the forum and prescribe the terms and conditions upon which it may be sued than to allow the Legislature to parcel out the State's sovereign functions to various bodies, by whatever name called, and allow them to be sued, thereby accomplishing by indirection what they say the State may not do directly.