**CITY OF DALHART v. CHILDERS et al.**
No. 479.

District Court, N. D. Texas, Amarillo
Division.

Feb. 15, 1937.

J. S. Bailey, of Dalhart, Tex., and Cooper & Lumpkin, of Amarillo, Tex., for complainant City of Dalhart.

Gibson & Sutton, of Amarillo, Tex., for the Fidelity Deposit Co.

R. E. Stalcup, of Dalhart, Tex., for the Receiver, W. J. Casey.

B. N. Richards, of Dalhart, Tex., for J. A. Childers.

JAMES CLIFTON WILSON, District Judge.

This is a suit by the City of Dalhart, Tex., on the official bond of J. A. Childers, as its city treasurer, and the Fidelity & Deposit Company of Maryland as the surety thereon.

The history and material facts are: Childers, first having been appointed as such city treasurer, qualified, by taking the oath and executing bond, in terms substantially as required by statute, in the sum of $10,000 on the 28th day of June, 1917, with the defendant Fidelity & Deposit Company as surety; the obligation of the bond, as required, was, "said J. A. Childers shall faithfully perform and discharge all of the duties required of him as such Treasurer as aforesaid, and *shall properly account for all money coming into his hands as City Treasurer then this obligation to be void,*" etc. There is not involved here any defalcation or willful official misconduct. The money sued for was placed in the First National Bank of Dalhart, by Childers, in which he was an officer, and the suit arises out of his inability to account, due to the failure of the bank. After his appointive term expired, Childers was elected city treasurer in April, 1919, and was successively elected every two years up to and including 1933, resigning October 29, 1934. No new bond was executed, but the premiums were paid during all of those years, and accepted and appropriated by the surety company. The said First National Bank, along with all other national banks, was closed by order of the President, March 4, 1933, and this one, along with many others, failed to open its doors. Childers had on deposit in the bank at the time city funds amounting to $11,749.16. When this happened, he was appointed conservator of the bank, and later, through a loan from the RFC, paid a 40 per cent. dividend to all common creditors, including plaintiff, thus reducing its claim to $7,049.50. This is the amount sued for. During all the years in question, up to the bank closing, interest was paid to plaintiff on its daily balances, this being with knowledge of its governing officials.

On the 25th day of July, 1917, the said First National Bank of Dalhart, was, in accordance with state statutes, selected by the city as its depository, and the bank executed its bond, in the sum of $25,000, with the United States Fidelity & Guar-

anty Company as surety, under its expressed terms to run for one year. Thereupon the city instructed the city treasurer, Childers, to deposit its funds in said bank. The records show it was again so designated and appointed at the expiration of this first year. There is an absence of city records showing such a designation for the third year, but premiums were paid on said bond for a total of three years, including 1920, which is sufficient for a holding that it was the officially designated depository for a total period of three years. On the 25th day of June, 1934, W. J. Casey was duly appointed receiver of said bank. In such capacity he was made a party defendant herein, the plaintiff also praying for a judgment against him for the balance due, alleging same to be a preferred claim. The surety company likewise prays, if judgment is against it, for judgment over against the receiver in a like amount, alleging plaintiff's claim to be preferred. Plaintiff's city attorney made demand on defendants for payment in January, 1935. This suit was filed in the state District Court of Dallas county, April 16, 1935, which was more than two years after the bank closed. It was removed to this court by the receiver.

The defendant surety company offers several defenses which appear to me to be highly technical, and without any real merit. First, upon the state of facts as above related, it pleads that the records of plaintiff show from the time of the original designation of the bank as the depository up to March, 1933, it continued to act as such depository for the city funds; that the said bank paid to the City of Dalhart interest on its deposits in said bank from the time it was first designated as depository up to the time it closed; that after such original designation there was no change of depository and no order or ordinance passed by the city council changing the original designation, or inconsistent with such original designation in any manner; that by reason of all such facts, the City of Dalhart is now estopped from denying that the First National Bank of Dalhart was its regular depository of city funds at all of the times in question (in effect, when a bank is once designated a depository it continues as such until such designation is formally canceled, even though premiums cease); that the city in all fairness and justice,

and in the application of equity should credit on its losses the total amount of interest paid to and accepted by it, and alleges that such interest payment aggregated the sum of approximately $500 per year.

This plea is based on the history and the fact that, about seventeen years prior to the bank's failure, the city had designated this bank as its official depository for a period of three years, requiring it to give the statutory bond, etc. This contention is made despite the fact it had ceased to be such depository for fourteen years prior to its failure, and the loss in question. Fourteen years is a long period of time. The premiums for the depository bond had not been paid during these fourteen years. I am not able to conceive of any process of reasoning by which any equitable estoppel could be based on that history. It is not contended that the surety company was led to its injury by such original designation and qualification of the bank as depository more than a decade prior to the failure. Wherein was this defendant surety company led to its prejudice or to change its position from a favorable or unfavorable to itself, by that fact? The truth is, the surety company entered into this bond sued on before the bank became the depository for plaintiff. The city treasurer's bond, upon which it was surety, was executed the 28th day of June, 1917. The bank did not qualify as a depository by giving its $25,000 bond as such, until July 25, 1917. As far as this record shows, neither the defendant surety company's bond, nor the premiums thereon were ever changed an iota from the date of its execution throughout the seventeen years the bond was in effect. The only effect of the qualification of the bank as a depository on the defendant surety company was to relieve it, for the time, from liability to pay to the city any moneys that the city treasurer might fail to account for, if occasioned only by the bank's inability to pay, and not by any official misconduct of the city treasurer. During the three years the bank was depository, its bond took care of losses so occasioned, and the Texas statutes expressly relieved the city treasurer's bondsmen of such losses. Revised Statutes of Texas, art. 2564.

In this connection, the surety company cites the fact the city was paid in-

terest· the seventeen years, and, as stated above, pleads that the city should be required to apply same as a credit on its claim against the bank. That is a remarkable proposition. The essence of that proposition is that the surety company should now have the interest. That would be the effect of it, since the surety company is liable for any judgment gotten against the treasurer, and the interest over such a great number of years would more than take care of any such judgment, even if for the full amount sued for. The fact that the city treasurer made an arrangement by which the bank was to pay interest, and did pay interest, has no bearing on any issue involved. This was a business matter between the bank, the treasurer, and the city, the surety company being in no way affected or concerned. If it felt it was affected, it should have done something about it at the expiration of the depository bond and not remained silent and accepted the premiums for fourteen years thereafter. Such interest certainly did not rightfully belong to the treasurer. If it was contracted to be paid to the city, as an inducement to place the money in the bank, when paid to the city, no law forbidding, it would be legally and irrevocably paid. Interest is paid for use of money. Nothing else is pointed out that would account for, or rather compensate for such use of the money by the bank through all of those years. To recall the interest lawfully paid on a deposit to be in turn applied in paying the bank's debt to that depositor would be a novel result for a bank failure. No reason is pointed out why the city should be penalized by being compelled to take its interest and pay its own claim with it. That would be exactly the effect. What would be the surety company's responsibility, by virtue of accepting premiums for these fourteen years, and its obligation to take care of exactly such losses when there was no depository? I think it hardly necessary to cite authorities to refute this claim for interest, or that the depository was continuing as claimed, other than the statutes.

There is nothing in the Texas statutes, governing the matter of such cities designating banks as depositories, that make such designations continue after the bond as such depository was no longer required by the city, and ceased existence for failure to pay premiums.

Revised Statutes of Texas, title 47 (as amended [Vernon's Ann.Civ.St.Tex. art. 2525 et seq.]), touching this subject of city depositories, provides in substance as follows:

Article 2559 (as amended by Acts 1931, 1st Called Sess., c. 9, § 1 [Vernon's Ann. Civ.St.Tex. art. 2559]): That such cities as plaintiff are "authorized" to receive sealed bids for the custody of such funds from any banking corporation that may desire to be selected as a depository. ·

Article 2560 (as amended by Acts 1931, 1st Called Sess., c. 9, § 2 [Vernon's Ann. Civ.St.Tex. art. 2560]): That such city shall select as depository the bank offering to it the largest rate of interest; that when so selected, the bank shall qualify by executing a bond in a sum not less than the total amount of the revenue of the city for the preceding year; that the condition of the bond should be for the faithful performance of its duties under the law as such, to pay all checks drawn upon it by the city treasurer; and that the funds be faithfully kept and accounted for.

Article 2561: That after such bond is given, the bank shall be designated as such depository until the time fixed (one year under article 2559) for another election; that then the city treasurer shall make all deposits in said depository; that if any bank so selected shall fail to qualify, then the governing body, after due notice, shall proceed to select another depository.

Article 2563: "The banking corporation [selected as the depository] shall remain the depository *until the next regular term for the selection of a depository,* unless the order selecting it be revoked" for specified causes.

Article 2564, relating to the liability of the *city treasurer,* provides: "The city treasurer shall not be responsible for any loss of the city funds through the negligence, failure or wrongful act of such depository, but nothing in this chapter shall release said treasurer from *responsibility* for any *loss* resulting from any official misconduct on his part *nor from responsibility for the said funds at any time when, for any reason, there shall be no city depository, nor until a depository shall be selected and the funds deposited therein,* nor for any misappropriation of such funds in any manner by him." (Acts 1905, p. 261, Id., § 38).

Article 1001, Revised Statutes of Texas, relating to city treasurer's duties, etc., among other things, provides:

"The treasurer shall give a bond in favor of the city in such amount, and in such form as the city council may require, * * * conditioned for the faithful discharge of his duties. He shall receive and securely keep all moneys belonging to the city, and making all payments for the same upon the order of the mayor, attested by the secretary under the seal of the corporation."

It is elementary that persons who enter into contracts with municipal corporations are chargeable with notice as to the extent of its powers and the powers of its officers and agents through whom the contract is made, and must, at their peril, take notice of any restrictions or limitations placed upon the same by the city charter, the statutes of the state, or the Constitution, and when an act is prescribed to be done in a certain manner by a city by the statutes of this state, under which the city operates, no estoppel or waiver can arise by reason of a failure to comply therewith. 30 Tex.Juris. § 179, p. 325; Corpus Christi v. Mireur (Tex.Civ.App.) 214 S.W. 528; Foster v. Waco, 113 Tex. 352, 255 S.W. 1104; Citizens' Bank v. Terrell, 78 Tex. 450, 14 S. W. 1003.

These quoted statutes, particularly the parts italicized by me, seem to be a complete answer to the plea of estoppel. It is contended these statutes were mandatory upon the city to select and keep a depository. I do not think so, but grant that to be true, the failure of the city to comply would not relieve the city treasurer and his surety from the liability under the bond, as here urged. The above statutes so expressly provide. On the other hand, they clearly point out the responsibility of the city treasurer in such an exact situation as we have here.

It is obvious that this bond was executed pursuant to these statutes. The terms of the bond, compared with the provisions of the statute, show that it was intended to be a statutory bond. For all intents and purposes, it is such. The statutory conditions specified for such bond, whether expressed in the bond or not, are read into it as a matter of law when executed. On the other hand, if the bond has provisions, though not, by express words, included in the statute, if consistent therewith, and with the city treasurer's statutory duty, certainly such provisions are valid and enforceable. The city council is given some authority by article 1001, Revised Statutes of Texas, supra, in respect to the form of the bond, which is not limited to mere formalities in drafting it. In addition to the statutory requirement as to discharging his official duties, the bond required the city treasurer "to properly account for all moneys coming into his hands as Treasurer." Though this is not specified as a condition of the bond in so many words, it is nevertheless the city treasurer's duty, as provided in such statute, to receive and securely keep all money belonging to the city, and to make all payments for the same upon the order of the mayor, etc. This added feature of the bond, as a condition of same, therefore was in compliance with the statute, certainly not inconsistent with it. The effect of the condition of the bond, in going further than the statute expressly provided, would not necessarily be fatal to its validity. For the city, the worst effect possible would be to make it a common-law bond, and whether a statutory bond or a common-law bond, it would be nevertheless binding and enforceable.

The inability of the city treasurer to account for the funds upon demand of the city is the occasion of this suit. This, he was not able to do to the extent of the amount here sued for. This was his duty under the law and under the bond. It would seem to me under any theory that that provision of the bond is perfectly valid and enforceable, as against the defenses offered.

There is a question of priority or preference here presented by the plaintiff, and particularly urged by the surety company. There is nothing under the facts to make the relation of the City of Dalhart and the bank anything other than ordinary debtor and creditor. Bolton v. City of De Leon (Tex.Civ.App.) 283 S. W. 213, 217. There is no statute or fact or relation present to justify a preference in favor of the city. At the time of the bank's failure and prior thereto, subsequent to 1920, the deposit of money in the First National Bank was entirely a matter of the selection and the responsibility of the city treasurer and his surety. The city merely had knowledge of its

money being deposited there. Obviously, from that date it relied solely on the treasurer's bond. Had it given instructions that the money be deposited there, it would not have changed the situation.

"The fact that city advised, or even instructed, the deposit to be made in the bank would be immaterial, and would afford no protection to Bolton." Bolton v. City of De Leon, supra.

There is no trust ex maleficio arising because an unlawful deposit was made and knowingly received by the bank. Under the laws of Texas which control, the deposit was lawful. The bond of the city treasurer was only for $10,000 and his deposit at the time of the failure was $11,749.16. Under the facts here, there could be no possibility of a trust resulting, except for the excess of a deposit over the bond, or $1,749.16. In order for a trust to result as to such excess, it is necessary that some law exist making the deposit by the city treasurer of any sum in excess of the bond unlawful. As to city depositories, the law requires that the depository bond be in a sum not less than the total amount of the revenues for the next preceding year. Article 2560. A failure to comply with this law, for example, might result in unlawful deposits and a corresponding trust. Article 1001, R.S.Texas, requires a city treasurer to make a bond, but the amount is not fixed even in a general way. The amount is to be such as the city council may require. They could have fixed it at $500 instead of $10,000. There is no law of Texas requiring that the bond of the city treasurer be increased to cover any such excess. Under such circumstances, no conceivable wrong could be attached to either the city treasurer or the bank by the deposit in excess of $10,000. No duty of any one or law would be violated. Therefore no trusteeship ex maleficio could arise. The authorities cited by the surety company are not inconsistent with this holding, but support it. They are: Maryland Casualty Company et al. v. Loid Rainwater, Bank Commissioner, 173 Ark. 103, 291 S. W. 1003, 51 A.L.R. 1332; State of Indiana ex rel. Luther F. Symons, Bank Commissioner, v. Wells County Bank et al. (Ind.Sup.) 196 N.E. 873, 103 A.L.R. 611; Robert E. Leach v. Farmers' Savings Bank of Hamburg, 204 Iowa, 1083, 216 N.W. 748, 65 A.L.R. 679.

The plaintiff's petition shows a suit upon this bond, and upon no alternative basis or theory. It is a suit for breach of the very terms of the written bond, by the payee named in it. Yet the respondents say: "The two-year statute of limitation applies, and the action of the City of Dalhart, if any it had, is barred by the two-year statute of limitation," citing Hatcher v. State, 125 Tex. 84, 81 S.W.(2d) 499, 98 A.L.R. 1213, and Phillips v. Hail (Tex.Civ.App.) 118 S.W. 190, 191. That part of Revised Statutes of Texas, art. 5527, material to this issue is as follows:

"There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description: 1. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing."

This suit is for debt, not damages, both evidenced by and founded upon such a contract in writing, and could only be barred by a lapse of four years, before filing suit, after the action accrued. The city's check was dishonored by the bank March 4, 1933. Assuming that this is a suit for a failure to pay that check and not on the bond, and that the cause of action accrued then, it would have been barred by the two-year statute (article 5526) when filed in April, 1935, but presenting checks to the bank and its failure to pay, did not constitute a demand upon the treasurer to account. They are very different things. The agreed statement of facts shows the demand on the city treasurer for payment, and his refusal to pay, did not occur until January, 1935. It must be kept in mind that the real action sued on here by the plaintiff is the one against the treasurer and the surety, not the bank. The bank is really, you might say, a nominal party. The plaintiff is not seriously seeking any judgment against it, and, of course, knows any judgment that might be procured against it would be an empty one, or practically so.

In any event, the issue of limitation is brought here by the city treasurer and the surety company, and particularly pressed by the surety company. The position of a city treasurer is one of highest trust. Ordinarily, in such relations

of trust, and in such relations of contract, where the contract does not fix a definite date of performance, the right to sue does not accrue until after demand for performance and refusal to perform. I think this is no exception. It is sometimes very difficult to determine when a cause of action does accrue. I doubt very much if the plaintiff's cause of action accrued against the bank on the very day that this bank holiday was declared by the President even though checks were refused on that day. It was not on account of the failure of the bank. That was not its status until the 23d day of April, 1933, when generally the solvent banks of the country were permitted to reopen. Even after that, long negotiations were had as to settlement, and as to whether the city's claim was a preferential one. Later, in 1934, a 40 per cent dividend was paid, and there is no record of any formal demand for payment, even on the bank, prior to January, 1935. There is no difficulty in determining the city had no right to sue the city treasurer and his surety until after a demand and a refusal. They are the ones, not the bank, that pleaded the statute. This being in January, 1935, even if the two-year statute applies, the cause is not barred.

Nor do the cases cited and relied upon by the surety company, to show that the two-year statute does apply to the situation we have here, appear to be applicable. In the case of Hatcher v. State, supra, the suit was against the treasurer for his negligent failure to collect a check and bank draft, which had been remitted to him in his official capacity, for money due the county, alleging that by his negligence in holding the check for an unreasonable length of time, payment of same was refused, on account of the failure of the bank. The damages sought were for negligence in failing to present and collect the draft before the bank closed. The court held that such suit was barred by the two-year statute. It was not there, as it is here, a suit for failure to observe an expressed statutory duty, and, in addition to that, expressly covered as a condition of the bond.

The other case, Phillips v. Hail, supra, was a suit against the constable for negligence in taking a defective claimant bond for property levied upon. The suit there was not brought until more than two years after the right of action accrued. The court held the two-year statute of limitation applicable. There is a distinction between these cases and this one. The plaintiff here does not rely on any issue of negligence, and no question of damages is involved. The city treasurer and his surety were, under the terms of the bond, expressly held and bound unto the City of Dalhart to account for all moneys coming into the hands of the city treasurer. The city invokes this obligation of the bond, and alleges it was breached, and relies solely for recovery on that fact. It is quite different in the case of persons, not obligees in the bond as the city is here, who may become victims of the negligent conduct of a public official. In those cases, the official bond stands in the nature of collateral for the security and protection of any such persons who are not parties to the bond. In that connection the court in the latter case said:

"The bond does not give the cause of action. The wrongs or delicts do; and the bond simply furnishes security to indemnify the persons who suffer by reason of such wrongs or delicts. And while the statute cited by plaintiff operates to bar every action brought upon the bond to enforce a cause of action which accrued more than five years prior to the commencement of the action, yet such statute does not operate to suspend the operation of the other statutes of limitation, or to continue in force or revive a cause of action which had already been barred by some one of the other statutes of limitation. Whenever a cause of action is barred by any statute of limitations, the right to maintain an action therefor upon a bond, which simply operates as a security for the same thing, must necessarily cease to exist."

I hold against the surety company's defense of limitation.

There is really one question, touching the admissibility of evidence, called to my attention by the brief of counsel for the surety company I think should be disposed of. The question is raised that there is no proof of liability of the surety company, who is only sought to be held liable for the debt of Childers; that the only evidence offered to prove liability of the surety was oral testimony of payment of premiums; that same was objected to by the defendant surety company for the reason that it was incompetent as not be-

ing the proper way to prove liability of a surety, since the same was within the statute of frauds, being an obligation to stand good for the debt, default, or miscarriage of another; that such oral testimony as to the payment of premiums is admissible and competent to prove liability under an insurance policy, but not under a contract of suretyship. I am also reminded in the brief that this oral testimony was permitted to be introduced with the reservation made by me that the question of its admissibility would be passed upon later.

This objection will be finally overruled. The complete bond of the city treasurer, J. A. Childers, as it finally became effective on the 28th day of June, 1917, is as follows:

"Know all men by these presents: That we, J. A. Childers, as principal, and Fidelity & Deposit Company of Maryland of Baltimore, Md. as sureties, are held and firmly bound unto The City of Dalhart, Texas, the sum of ten thousand and no/100 dollars for the payment of which we hereby bind ourselves and our heirs, executors and administrators, jointly and severally, by these presents.

"The condition of the above obligation is such, that whereas the above bounden J. A. Childers was on the 26th day of June 1917 duly appointed to the office of City Treasurer in and for City of Dalhart in the State of Texas. Now therefore, if the said J. A. Childers shall faithfully perform and discharge all of the duties required of him by law as City Treasurer aforesaid and shall properly account for all moneys coming into his hands as City Treasurer then this obligation to be void, otherwise to remain in full force and effect."

It will be readily seen if this objection to the oral proof of the payment of premium is good, that it would have been just as good had this bank failure and breach of the bond occurred during the first year following its execution. It appears that the bond itself does not recite the consideration paid, nor what the premiums were, not does it specify whether it is to run for one year, two years, or to be, with premiums paid, a continuing bond. All you could ever have in the way of evidence to show the bond was in effect, even for its first year, would be oral testimony as to the payment of premiums. If the bank had failed, and the city treasurer had failed to account on demand, immediately after this bond was executed, though the surety company had actually received premiums and had signed the bond, if this objection is good, there could have been no recovery against it because the written bond or contract did not recite the payment of any premium. All we have as to the period covered by this bond is the statutory term of office of the treasurer, which is two years. This is not conclusive since the premiums were only paid for one year at a time. Ordinarily, such bonds specify the term of the bond. It is significant in this case that it does not. In other words, it shows that it was the understanding and the intention of the parties that this should be a continuing bond as long as the premiums were paid. Anyway, under the statute, it is the contract that must be in writing or a sufficient memorandum thereof. Proof of payment of premiums is proof of payment of consideration, of performance by one side. That there was an agreement to pay premiums and that they were paid, where the written bond, as here, fully protects the one invoking the statute against fraud, may be shown by parole. Whatever the general rule may be as to the inadmissibility of testimony to show the payment of premiums as continuing such a bond in effect, under the circumstances and facts of this case, certainly such oral testimony would be admissible for that purpose. Otherwise, as I have said, this bond would have never been capable of enforcement from the day it was signed. Really the testimony objected to was an admission by the defendant Childers that he paid the premiums for all the years in question.

But this question may be summarily disposed of with the suggestion that it is included in the agreed statement of facts that the premiums were paid annually for all the years in question. This is signed by all parties. There is a reservation at the end of same that any party may object to the admission in evidence of any fact agreed to therein, but the ground of any such objection is limited solely to immateriality. Certainly no one will seriously contend that it was not material to show that the premiums were paid.

For the reasons stated, judgment will be for the plaintiff, and a decree may be drawn accordingly.