**CITY OF CUERO**

v.

**TUPPER–TEXAS, Inc., Tupper Corporation, and Earl S. Tupper.**

**No. 15499.**

United States Court of Appeals
Fifth Circuit.

Sept. 16, 1955.

Robert O. Campbell, Houston, Tex., Jack Binion, Butler, Binion, Rice & Cook, Houston, Tex., of counsel, for appellant.

William R. Brown, Houston, Tex., Ross Staine, Baker, Botts, Andrews & Shepherd, Houston, Tex., of counsel, for appellees.

Before HUTCHESON, Chief Judge, JONES, Circuit Judge, and CHRISTENBERRY, District Judge.

JONES, Circuit Judge.

The City of Cuero, Texas, plaintiff in the District Court and appellant here, is a municipal corporation in and existing under the laws of the State of Texas. It will usually be called the City in our references to it. The defendant, an appellee here, Tupper-Texas, Inc., is a Delaware corporation qualified in Texas. The defendant, Earl S. Tupper, also an appellee, is a Massachusetts citizen. Tupper Corporation, joined as a defendant below, has disclaimed and is not a party to the appeal to this Court. Federal jurisdiction stems from diversity of citizenship.

In 1941, the City acquired a tract of 501 acres for $25,000 to provide a site for the location of a Government air force training field. The City installed sewage and water systems at a cost of $25,000. The funds for financing the cost of land and improvements were raised by a bond issue. The City spent other funds on the project and W. P. A. provided drainage. The City leased the tract to the United States for a dollar a year. Hangars and other structures of considerable extent and of substantial cost were erected by the Government. When the war came to an end the Government sold the improvements on the property to the City for $22,000 and very soon thereafter the City made a sale of one of the buildings for a like amount. The property was operated as a municipal airport and a part of it was leased to Cuero Flyers, Inc.

The Tupper Corporation was a manufacturer of plastics with its plant in Massachusetts. Earl S. Tupper, one of the defendants, was its President, Treasurer, and a director. He was its sole stockholder. In 1948 Tupper Corporation was looking for a site on which to establish a plant in Texas. Negotiations were entered into between Tupper and representatives of the City of Cuero. The City was anxious to procure the location of an industry and the payrolls and other benefits incident to such activity. Proposals were first considered under which Tupper Corporation or its subsidiary would purchase the tract for $10,000 and enter into a commitment to establish a plant employing 400 people. This obligation was never incurred but it was agreed instead that Tupper should pay $64,000 for the property, and agreed to have upon the property machinery and materials of a value of not less than $100,000 on January 1st of each of the next three years. The sale was approved by a very substantial majority at a municipal election. It was ascertained that the balance of about $39,000 unpaid on the bond issue could not be paid until maturity in 1951. Tupper believed some tax benefit would result if the property was acquired under a lease and option arrangement. For these and perhaps other reasons the parties worked out a new proposal whereby Tupper would lease the property from the City for three years at a rental of $18,000 per year, maintain the equipment and materials as previously discussed, and at the end of the term of the lease Tupper could, at his option, purchase at a price of $10,000. A statute of Texas, Vernon's Ann.Civ.St. art. 1015c, required that airports shall not "ever be sold until such sale is authorized by a majority vote of the qualified voters" of the municipality. The lease-option proposition was submitted to the electorate of the City and approved on August 27, 1948.

The City Council of Cuero was composed of four councilmen and the Mayor. The City charter provided that "The * * * title to the streets, highways, public thoroughfares and property of the City, its avenues, parks, bridges and all other public places and property, are hereby declared to be inalienable except by ordinance duly passed by a majority of all members of the City Council; * * *" A meeting of the Council was held on September 3, 1948, attended by two councilmen and the Mayor. At this meeting two ordinances were considered by the councilmen present. One ordi-

nance abandoned the public use of the airport site. The other ordinance approved the lease-option arrangement and authorized the Mayor and the Secretary to execute and deliver to Tupper-Texas, Inc. the lease and purchase option and to execute a deed and place it with a bank in escrow under the terms of a letter which was attached to the ordinance. A director of the Cuero Chamber of Commerce made the point that the documents as drawn did not obligate Tupper to operate a factory or to engage any employees. He was told that it was intended that Tupper not be obligated. One of the councilmen testified that the transaction as first negotiated could not have been carried out because the $10,000 consideration would have left the City without funds for retirement of the bonds. The ordinances passed. The Mayor did not vote upon the ordinances, he having no vote except in case of a tie. He did sign the ordinances as evidence of their enactment. The agreements were executed and delivered. The City executed also a deed to Tupper-Texas, Inc., a wholly owned subsidiary of the Tupper Corporation. The deed was placed in escrow with a bank for delivery to Tupper-Texas, Inc. upon notice from the City that the contract terms had been performed by the grantee.

Cuero Flyers, Inc., being in possession of a part of the property under its deal with the City, declined to allow Tupper-Texas, Inc. to have possession of all of the site. The City brought suit against Cuero Flyers, Inc., to put Tupper in possession, and Cuero Flyers, Inc., asserted as a defense that the lease and purchase option were invalid because not approved and authorized by a majority of the City Council. The City took the position that the ordinance and the instruments executed pursuant to the ordinance were valid and legal in all respects. This litigation was settled in 1951. The materials and equipment were placed upon the property and the money payments designated as rent were made pursuant to the agreement. On April 30, 1951, the City Council, by a majority vote of all its members, adopted a resolution finding that Tupper-Texas, Inc. had paid the amount required and fully performed its agreement, and directing the escrow agent to deliver the deed to Tupper-Texas, Inc. upon payment of the $10,000 stipulated in the option. The sum was paid and the deed was delivered. Soon thereafter the corporation, Tupper-Texas, Inc., conveyed all minerals in the land to Earl S. Tupper, individually.

Tupper was interested in manufacturing ventures in Canada and in Florida. In February, 1952, and at intervals until July, 1952, machinery was taken from the Cuero property and shipped to Florida. Tupper denies that he had then abandoned the expectation of going forward with the plans for the Texas plant at Cuero. On September 9, 1952, this suit was commenced and soon thereafter the remaining equipment and materials were removed from Cuero to prevent, as Tupper put it, their "being tied up" by litigation. No plastics factory or other industry has been placed in Cuero by the Tupper interests.

The Constitution of the State of Texas contains this prohibition:

> "No county, city, or other municipal corporation shall hereafter become a subscriber to the capital of any private corporation or association, or make any appropriation or donation to the same, or in anywise loan its credit; but this shall not be construed to in any way affect any obligation heretofore undertaken pursuant to law." Art. XI, Sec. 3, Tex.Const., Vernon's Ann.St.

The Mayor of Cuero was, at the time of the trial in 1954, of the opinion that the property had a value of $200,000 at the time of the Tupper contract. But it was shown that the City offered the property in 1947 for $44,800 and in 1952 the Mayor then thought the property would not then sell for more than approximately $100,000. The District Court took judicial notice that land val-

ues increased all over Texas between 1948 and 1951.

The City sued to cancel its deed to Tupper-Texas, Inc. on the ground of invalidity. The City asserts that the deed was given in violation of the above-quoted provision of the Texas Constitution, that the charter provision requiring an ordinance adopted by a vote of a majority of all of the City Council was breached, and that the deed was procured by fraud. The defendants question the plaintiff's right to inject the constitutional provision into the case because, say the defendants, it was not raised in the trial court by pleadings or evidence. The defendants assert that the deed was in all respects valid and also set up the defenses of estoppel, ratification and limitation.

The facts as disclosed by the record and as found by the District Court do not bear out the charge of fraud. It is provided by a Texas statute:

"Actionable fraud in this State with regard to transactions in real estate or in stock in corporations or joint stock companies shall consist of either a false representation of a past or existing material fact, or false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract." Tex. Rev.Civil Statutes, Art. 4004.

There was much said by and on behalf of Tupper as to plans and intentions of establishment of a plastics plant in Cuero, but there is no proof of the falsity of any representations of material fact or of any false promise to do some act in the future. On the contrary, it is apparent that Tupper was relieved from the making of any promises to establish a plant and was only required to assume an obligation to maintain on the premises at stated times material and equipment of a designated value. This obligation was performed. It is not shown that the declarations as to the intention and plans of Tupper to place a plastics plant in Cuero were made in bad faith. On the fraud issue the plaintiff has not carried the burden of proof which the law has laid upon it.

The City contends that the transaction with Tupper violates the provision of the Texas Constitution prohibiting municipal corporations from making appropriations or donations to private corporations. The defendants' contention that the plaintiff City should not be heard to raise the "appropriation or donation" issue because neither pleaded nor proved, was considered by the District Judge, along with Rule 15(b) of the Federal Rules of Civil Procedure. So much of the Rule as is relied upon provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues." Fed.Rules Civ.Proc. rule 15(b), 28 U.S.C.A.

The District Judge was of the opinion that the Rule had no application to this situation. The District Judge, however, proceeded to consider the question of whether there was an appropriation or donation within the meaning of the quoted provision of the Texas Constitution. We shall do likewise. See Fidelity & Casualty Co. of New York v. Mitchell, 5 Cir., 1943, 134 F.2d 537.

Authority is cited for the principle that the sale of property at a grossly inadequate price is in effect a gift of public funds. 38 Am.Jur. 167. We do not question the soundness of the statement but cannot see that it has any application here. The City used the figure of $10,000 as the amount of the consideration. It seems clear from the evidence that the parties regarded $64,000 as be-

ing the money consideration paid for the property, and we are without any doubt as to the correctness of their conclusion in this respect. The District Judge thought the property probably was worth more than $64,000 in 1948, but he found the figure was not so out of line as to amount to a donation. The finding was correct. The electorate of the City in approving the transaction and the resolution of the City Council in directing delivery of the deed by the escrow agent were tacit findings by or on behalf of the City as to the sufficiency of the consideration. The Courts must not be expected to substitute their judgment for that of the chosen officials and of the citizens of the community as to the fairness of a sale made by them with full knowledge of every fact incident to the transaction. The conveyance by the City to Tupper-Texas, Inc., was not an appropriation or donation prohibited by the Texas Constitution.

The appellees, contrary to the conclusion of the District Judge, would have us say that the attendance by the Mayor of Cuero at the meeting of the City Council which adopted an ordinance approving the deal between the City and Tupper-Texas, Inc., and the signing by the Mayor of the ordinance, resulted in a valid adoption of the ordinance by a majority of the Council. They insist in short that the absence of two members of the Council is the equivalent of their being present and voting nay on the adoption of the ordinance; and that the signing of the ordinance by the Mayor, as Mayor and not as a Councilman, is the equivalent of his voting for it as a member of the Council. It is to be noted that the Charter of Cuero authorizes the City to sell or lease real property without prescribing the manner of authorizing such sale. It is only the sale of "streets, highways, public thoroughfares and property of the City, its avenues, parks, bridges, and all other public places and property" where the sale is authorized by the Council itself that requires an "ordinance duly passed by a majority of all members of the City Council". If, as we believe is the case, the authority for the sale was not the vote of the Council but the vote of the people, there would be no difficulty in reaching the conclusion that the ordinance was merely a ministerial act and that the resolution of April 30, 1951, validated the transaction if it then had any infirmities that required validation.

The District Judge expressed the view that the charter provision was not in conflict with the statutory provision expressly referring to the sale of airport property and prohibiting sales of such property until authorized by a vote of the qualified voters. It is difficult to see a reason why approval of a sale by the Council should be required where the voters have approved. The situation is analogous to one where the approval of a proposal by stockholders of a corporation dispenses with any action by the board of directors. It is our opinion that the requirements of the law of Texas for the sale of the property were met. The sale was authorized by the qualified voters of the City, it was authorized by an ordinance adopted by a vote of a majority of a quorum of the City Council, and it was, by implication, approved by the resolution of a majority of all of the City Council.

In addition to insisting that the transaction was not in any respect defective, Tupper contended and the District Court held that the City is estopped to attack the effectiveness of the deed. For the reasons hereafter stated we agree that this is so. The City asserts that estoppel does not lie. It seeks to avail itself of the doctrine that a City is not estopped to repudiate an act which is ultra vires or beyond the powers of the City, citing a number of Texas cases and from this Court the case of Cameron County Water Improvement Dist. No. 8 v. De La Vergne Engine Co., 5 Cir., 1938, 93 F. 2d 373, 376. The doctrine announced is, we think, sound but is not applicable here. There was no absence of power in the City of Cuero to sell the property. In the Cameron County case it is said:

"Where a contract is invalid because the particular officer who made

it was wanting in authority, or because of some defect or irregularity in the agreement, it is only necessary for the governing body to have full knowledge of all the material facts in order to enable the municipality to ratify it or to become estopped to plead its invalidity; * * *."

We do not find in the case here before us, as was found in the Cameron County case, a want of power to make the agreement or a violation of a positive rule of law prohibiting the execution of it.

 The City says that it is not to be estopped with respect to an act done in the exercise of its public or governmental capacity as distinguished from its private or proprietary capacity. The operation of an airport in Texas by a municipality is, by virtue of a statute, a governmental function. Tex. Rev. Civil Statutes, Art. 46d–15; Imperial Production Corp. v. City of Sweetwater, 5 Cir., 1954, 210 F.2d 917. The Supreme Court of Texas has said that "The opinion is expressed in a number of decisions that a city may be estopped even when it is acting in its public capacity if it has received or accepted benefits from the transaction. [Citing cases.]" City of San Angelo v. Deutsch, 126 Tex. 532, 91 S.W.2d 308, 311. The doctrine was followed and applied in City of Dallas v. Rosenthal, Tex.Civ.App., 239 S.W.2d 636. Estoppel against a city has been upheld by the Supreme Court of the United States in a suit involving city streets. Town of Essex v. New England Telegraph Co., 239 U.S. 313, 36 S.Ct. 102, 60 L.Ed. 301. Here the transaction was approved and authorized by a vote of the people, and the City had the benefit of receiving $64,000, of which it has offered to restore $10,000. The District Court concluded that under all the facts right and justice permitted and equity required the application of estoppel against the City. We reach the same conclusion. The approval and authorization by a vote of the people, the execution of the transaction in accordance therewith, the contention of the City as to the validity of the ordi-

nance and agreement in the suit of Cuero Flyers, Inc., the acquiescence by the City in the expenditure of funds by Tupper, and the resolution of the Council determining that Tupper was entitled to a deed as well as the receipt and retention of the monetary consideration and the long delay in complaining are among the elements justifying the invocation of the estoppel principle. Cf. City of South Houston v. Carman, 5 Cir., 1925, 6 F.2d 358.

Other questions are raised and argued in the excellent briefs with which we have been favored by counsel for the parties. These have been considered but, we think, require no comment.

The District Court entered judgment for the defendants. That judgment is affirmed.