**UNITED STATES of America**

**v.**

**CERTAIN LAND IN the CITY OF FORT WORTH, COUNTY OF TARRANT, STATE OF TEXAS, and the City of Fort Worth, Jack Danciger, et al.**

**No. CA-4-63-45.**

United States District Court
N. D. Texas,
Fort Worth Division.
July 24, 1964.

Claude Brown, Asst. U. S. Atty., Fort Worth, Tex., for Government.

S. G. Johndroe, Jr., City Atty., Fort Worth, Tex., for City of Fort Worth.

Paul Cook, Fort Worth, Tex., for Jack Danciger.

BREWSTER, District Judge.

Prior to the institution of this suit, the government had selected a tract of land consisting of a number of lots in the downtown business district of Fort Worth, Texas, for the location of a federal office building. Most of the tract had been acquired through direct negotiations with the various owners by the end of 1962. A dispute between the City of Fort Worth and Jack Danciger over the ownership of the West 60 feet of Lot 3, Block 1, Hirshfield Addition to the City of Fort Worth prevented private acquisition of that lot; and on April 8, 1963, the government filed suit to condemn it. An order was entered on the declaration of taking requiring surrender of possession; and the government took possession on April 14, 1963.

The parties have entered into an agreement with the government about the price to be paid for the lot, and to let the money paid be distributed according to the ownership of the property. The government has fully discharged its liability by paying the agreed amount into the registry of the Court; and the only question remaining to be decided in the case is whether Danciger is entitled to enforce a contract whereby he had agreed to purchase and the City had agreed to sell the lot.

The Court's duty to order appropriate distribution of the compensation for the taking of the property gives it jurisdiction to determine who owned the land when the government took it. Meadows v. United States, 4 Cir., 1944, 144 F.2d 751; United States v. 2979.72 Acres of Land, 4 Cir., 1956, 237 F.2d 165; United States v. 164.51 Acres of Land, D.C., Ark., 1962, 205 F.Supp. 202.

Each of the parties has filed a motion for summary judgment. Upon the hearing of such motions, the respective attorneys for the parties stated to the Court that the only issues were ones of law, and that the controversy should be disposed of by summary judgment.

The basis on which the case is decided makes immaterial some of the legal questions raised, and only a brief summary of the undisputed facts is necessary. The lot in question, located directly across the street from the city hall, was acquired by the City in 1950 for use as a municipal employee parking lot. The tract was therefore public property. The instruments on which Danciger based his claim to the lots were one styled "Contract of Sale", dated November 17, 1954, and another called "Escrow Agreement", dated June 8, 1955. The purchase price provided by such instruments was $27,600.00 cash and additional valuable concessions to the City. No progress was made toward the consummation of the sale between June, 1955, and the time of the taking. There was never any publication in the official newspaper of the City of the intention to sell the property.

Section 5, Chapter XXII, of the Charter of the City of Fort Worth, dealing with the sale of property belonging to the City, provides insofar as it is material here:

"The City of Fort Worth may * * * sell, lease, alienate, exchange or encumber any real estate or personal property owned or acquired by it; provided, however, that no sale shall be made of any public property owned by said City whose value exceeds Twenty-five Thousand ($25,000.00) Dollars, without first making such intention known by means of publication in the official newspaper of the City once a week' for four consecutive weeks, during which time it shall be lawful for qualified voters, who shall not be fewer than five hundred in number, to petition the City Council for a referendum, in which event

the matter of such sale shall be referred to the people at an election to be held for that purpose, at the time and in the way and manner to be prescribed by the City Council of said City, and in the event a majority of the votes cast at such election is in favor of such proposition, then the sale shall be made; otherwise, such sale shall not take place."

██ The City of Fort Worth was and is a home rule city under Article 11, Section 5, Constitution of Texas, Vernon's Ann.St. It was proper for its charter to provide restrictions and limitations on the method and manner of selling its property. The failure to comply with the requirements of Section 5, Chapter XXII, above quoted, rendered the contract of sale of the lot in question void. Wyatt Metal & Boiler Works v. Fannin, Tex.Civ.App., 1937, 111 S.W. 2d 787, writ dismissed; Culver v. Miears, Tex.Civ.App., 1949, 220 S.W.2d 200, writ refused; McKinney v. City of Abilene, Tex.Civ.App., 1952, 250 S.W.2d 924, writ ref. n. r. e. In the last cited case the Court said at page 926:

"The effect of the failure of the Board of Commissioners of the City of Abilene to comply with the charter provisions requiring notice and hearing of the 'sale' was to render the transaction void and the court did not err in so holding. * * *"

██ Danciger's claim that the City is estopped to assert the invalidity of the contract of sale is not tenable. It has long been the rule that persons dealing with a city are charged with knowledge of the limitations on its powers. City of Brenham v. City of Brenham Water Co., 1887, 67 Tex. 542, 4 S.W. 143; City of Big Spring v. Ward, Tex.Comm.App., 1943, 140 Tex. 609, 169 S.W.2d 151, opinion adopted by Supreme Court; City of Beaumont v. Moore, 1947, 146 Tex. 46, 202 S.W.2d 448; Zachry v. City of San Antonio, 1956, Tex.Civ. App., 296 S.W.2d 299, affirmed 157 Tex. 551, 305 S.W.2d 558. Estoppel cannot validate a contract with a municipality which is void for non-compliance with mandatory requirements of an applicable statute or a provision of the charter of the city. City of Beaumont v. Moore, supra; Zachry v. City of San Antonio, supra; City of Dalhart v. Childers, D.C. Tex., 1937, 18 F.Supp. 903.

Danciger cites City of Cuero v. Tupper-Texas, Inc., 5 Cir., 1955, 226 F.2d 121, and City of Corpus Christi v. Gregg, Tex.S.Ct., 1956, 155 Tex. 537, 289 S.W. 2d 746, in support of his argument that estoppel is applicable to this kind of case. Each of those cases is distinguishable from this one. In the City of Cuero case, the Court said, 226 F.2d at page 125, that all legal requirements for the sale of property had been met, and on page 126, that even if such had not been the case, the receipt by the city of a substantial amount from the buyer on the purchase price would make estoppel applicable under the rule stated by the Supreme Court of Texas in City of San Angelo v. Deutsch, 1936, 126 Tex. 532, 91 S.W.2d 308, 311: " * * * that a city may be estopped even when it is acting in its public capacity if it has received or accepted benefit from the transaction." In the City of Corpus Christi case, the City had received and accepted over $400,000.00 out of the transaction it was seeking to repudiate. In addition, articles were published in the Corpus Christi newspapers announcing that the City would receive bids for certain oil and gas leases, and fourteen bids were actually received by the City. In the present case, there was no public notice and opportunity for bids, and the City of Fort Worth never received or accepted any benefits from the transaction.

The Court is of the opinion that Danciger's motion for summary judgment should be denied, and that the City's motion should be granted. Summary judgment will therefore be entered in favor of the City decreeing that it is entitled to the proceeds of the sale of the lot in question heretofore paid into the registry of this Court.